IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REV. AUGUSTUS SIMMONS ENOCH, | |
| Plaintiff | Case No. 1:19-cv-00026 ERIE |
| vs. | RICHARD A. LANZILLO |
| DAVID PERRY, ET AL., | UNITED STATES MAGISTRATE JUDGE |
| Defendants | ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER |
| | ECF NO. 6 |

Plaintiff Augustus Simmons Enoch (Plaintiff) has filed an "Order to Show Cause for an [sic] Preliminary Injunction and a Temporary Restraining Order," which the Court will construe as a motion for a temporary restraining order/preliminary injunction. ECF No. 6. For the reasons that follow, the motion is DENIED.[1]

I.  Background

Plaintiff is an inmate incarcerated at the State Correctional Institution at Forest (SCI-Forest). He commenced this action with the filing of a motion for leave to proceed in forma pauperis on February 8, 2019. ECF No. 2. This Court granted that motion on February 11, 2019, and his Complaint was filed the next day. ECF No. 4, ECF No. 5. The Complaint brings claims against numerous defendants alleging violations of the Plaintiff's rights under the First and Eighth Amendments to the Constitution (Count I) and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1, et seq. (Count II). He also brings a claim of

---

[1] The Parties have consented to the jurisdiction of a United States Magistrate Judge. *See* ECF Nos. 23, 24, 31, 40; 28 U.S.C. § 636(c).

1

supervisory liability against several defendants (Count III). On February 12, 2019, he filed a motion for a temporary restraining order and preliminary injunction pertaining to his medical care and asking for accommodations for his religion. ECF No. 6.

In his motion, the Plaintiff states that SCI-Forest personnel sprayed him with "O.C. spray" on two occasions, once on September 25, 2018 and again on September 26, 2018.[2] Plaintiff asserts that on the second occasion, prison personnel sprayed him with O.C. spray while he was unconscious. ECF Nos. 7, at p. 2; 7-1 at ¶ 3. Plaintiff also claims that prison medical staff have failed to respond to his sick call requests relating to his breathing and asthma problems and that he has been denied use of his inhaler/asthma pump. He requests injunctive relief in the form of an order prohibiting the use of O.C. spray upon him, and directing prison officials to have him seen on a weekly basis in the "asthma clinic" and to provide him with an inhaler/asthma pump.

Plaintiff also seeks prohibitory and mandatory injunctive relief for conduct by the defendants that Plaintiff asserts has burdened or failed to accommodate the practice of his religion. This conduct includes the defendants' alleged failure to provide Plaintiff with certain foods he requires for feast days, fasting, a prayer bag, and to accommodate general dietary restrictions, and defendants' refusal to allow him to possess a prayer rug while housed in the restricted housing unit, or "RHU." The Court deferred ruling on Plaintiff's request for injunctive relief until such time as service was effectuated. ECF No. 8. The Defendants have filed Responses in opposition to Plaintiff's motion, *see* ECF Nos. 35, 36, 39, and the Court conducted a hearing on the motion on June 5, 2019. The matter is now ready for disposition.

---

[2] O.C. stands for oleoresin capsicum. O.C. spray is commonly known as pepper spray. *Torres v. Beverage*, 2017 WL 1058910, *1 n.2 (W.D. Pa. March 21, 2017).

2

II. Standards

A preliminary injunction is an extraordinary remedy; it "should be granted only in limited circumstances." *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008). The first two are the "most critical factors: [a movant] must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), as amended (June 26, 2017) (internal quotation marks omitted).[3] "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* See also *Pennsylvania v. Trump*, 351 F. Supp. 3d 791, 810 (E.D. Pa. 2019).

Furthermore, because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution. *Rush v. Correctional Med. Services, Inc.*, 287 Fed. Appx. 142, 144 (3d Cir. 2008) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)). This is particularly so where the requested preliminary injunction "is directed not merely at preserving the status quo but ... at providing mandatory relief." *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980). Where mandatory injunctive relief

---

[3] In demonstrating the likelihood of success on the merits, a plaintiff need not show that it is more likely than not that it will succeed. *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc). Instead, all a plaintiff must show is "a likelihood of success on the merits (that is, a reasonable chance, or probability, of winning) to be granted relief." *Id.* (emphasis in original).

is requested, "the burden on the moving party is particularly heavy." *Id.* Thus, a request for some form of mandatory injunctive relief in the prison context must be considered "with great caution" and "judicial restraint." *Goff v. Harper*, 60 F.3d 518 (3d Cir.1995).

III. Analysis

Plaintiff's requested relief falls into two distinct categories: injunctive relief relating to the use of O.C. spray and treatment of his associated asthma/breathing conditions, and injunctive relief directing the defendants to provide materials necessary for the exercise of his religion. Plaintiff has not met his burden on either category of injunctive relief, and his motion for preliminary injunction/temporary restraining order will be denied. Each claim will be addressed in turn.

    A.    The O.C. Spray Claims

Plaintiff alleges that he was sprayed with O.C. spray on September 25, 2018. ECF No. 5, p. 4. After this incident, he claims to have been put in a "hard cell" without his prescribed asthma pump/inhaler. *Id.* He states he had difficulty breathing, disruption to his sleep, and resultant problems with activities such as cleaning, walking, and/or breathing. *Id.* Plaintiff claims to have been sprayed with O.C. spray again the next day, September 26, 2018. He claims to have fallen unconscious before being sprayed. *Id.* at 4-5. His complaint raises claims under the First and Eighth Amendments to the U.S. Constitution based on these actions. *Id.* at 26-27. Specifically, he claims that Defendants Perry, Byers, Sutherland (incorrectly identified by Plaintiff at "Sutterlander"), Lamoreaux and Jane Doe conspired to confiscate his asthma pump and retaliate against him. *Id.* at 26.

Plaintiff has not met his burden to show that he is entitled to preliminary injunctive relief. The record demonstrates that Plaintiff is unlikely to succeed on the merits of this claims against these Defendants and that he is not facing immediate or irreparable harm.[4]

1. The Asthma Pump/Inhaler[5]

Plaintiff's motion requested injunctive relief in the form of an order directing the Defendants to provide him with an asthma pump to be utilized as needed. At the hearing on his motion, however, Plaintiff acknowledged that he has been provided with an appropriate ibuterol inhaler/asthma pump and that no one is denying him use of that device as needed for his asthma. He offered no evidence that his access to or use of this device is threatened in any way. These admissions moot his request for injunctive relief as it relates to his inhaler. *See, e.g., Hughes v. Pillai*, 2007 WL 2407282, at *1 (W.D. Pa. Aug. 20, 2007); *Wilson v. Prasse*, 325 F. Supp. 9, 12, (W.D. Pa. 1971). This conclusion is further supported by prison medical records, submitted by Defendants Lamoreaux and Sutherland, which show that he was given an asthma pump as recently as April 13, 2019 and that a prescription for such a device is still currently available to him. ECF No. 36-1, p. 45. Thus, because the requested relief has been provided, the Plaintiff's request for a preliminary injunction on this claim is denied as moot.

2. The Clinic "Check-Up" List

Plaintiff's claim for access to the prison asthma clinic is also moot. Plaintiff asks for injunctive relief ordering the Defendants to place him "back on the asthma clinic for weekly

---

[4] Having concluded that the Plaintiff has failed to demonstrate a likelihood of success on the merits of his claims or the threat of immediate or irreparable harm, the Court need not discuss the remaining equitable factors. *See Otsuka Pharmaceutical Co. Ltd., v. Torrent Pharmaceuticals Ltd.*, 99 F. Supp. 3d 461, 505 n.45 (D.N.J. 2015) (citing *McDavid Knee Guard, Inc. v. Nike USA, Inc.*, 683 F.Supp.2d 740, 744 (N.D. Ill. 2010) ("If the moving party fails to demonstrate either [likelihood of success or irreparable harm], then a district court considering a motion for preliminary injunction need not proceed further with its analysis to deny the preliminary injunction motion.").

[5] The parties use the term "asthma pump" and "asthma inhaler" interchangeably and the Court will as well.

check-ups." ECF No. 7, p. 1. But the medical records show that Plaintiff was readmitted to the prison's asthma Chronic Care Clinic in mid-April of 2019, and that he refused to attend his scheduled appointment for medical evaluation. ECF No. 36-1, at 5-6, 8-9. Counsel for the medical defendants also confirmed at the hearing that the Plaintiff was indeed on the chronic clinic list. While Plaintiff may desire to be seen with greater frequency, his own testimony demonstrated that he is receiving reasonable medical care for his asthma and related conditions. Because he has been provided with the essential relief he has requested, his motion for preliminary injunction on this claim is moot as well. *See, e.g., Yang v. Reno*, 852 F. Supp. 316, 327 (M.D. Pa. 1994). Moreover, prison medical records demonstrate that the Plaintiff has been receiving continuous treatment and care for his asthma and related breathing complaints. *See id., generally*. Thus, even if his claim was not moot, he is unlikely to succeed on the merits against Defendants Lamoreaux and Sutherland, and the record belies any threat of immediate or irreparable harm.

        3.      The Use of O.C. Spray

Plaintiff also seeks injunctive relief which orders the "PA DOC to stop all use of O.C. spray against plaintiff while in the D.O.C." ECF No. 7, p. 1. As prison medical personnel, neither Defendant Lamoreaux or Sutherland have control over the use of O.C. spray in the institution. Thus, he has failed to meet his burden of establishing a likelihood of success on the merits against those Defendants relating to the use of O.C. spray. As to Defendant Byers, a prison psychiatrist, the injunctive relief requested regarding the use of O.C. spray likewise does not relate to him or the claims Plaintiff brings against. Thus, the Plaintiff is also unlikely to succeed against that Defendant.

6

As to the DOC Defendants, Plaintiff has failed to meet his burden of establishing that the threat of harm from the O.C. spray is *immediate* and present. *See, e.g., Simmons v. Overmyer*, 2018 WL 6078085, *3 (W.D. Pa. Nov. 21, 2018) (citing *Raupp v. Federal Bureau of Prisons*, 2006 WL 3332089, *1 (W.D. Pa. Nov. 16, 2006)) (emphasis in original). That is, "an injunction cannot be issued based on past harm." *Id.* (citing *Boyd v. Larson*, 2017 WL 1904278, *6 (M.D. Pa. Apr. 21, 2017). Nor may a preliminary injunction "be used simply to eliminate the possibility of a remote future injury." *Holiday Inns of Am., Inc., v B&B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969). Plaintiff does not allege that the use of O.C. spray against him is an ongoing, continuing concern. He points only to two instances that occurred in the past—both in September of 2018. *See* ECF No. 7-1, p. 1. Further, Plaintiff's testimony at the hearing established that he has not been sprayed with O.C. spray after the events alleged in his Complaint. Such allegations do not represent the type of "presently existing actual threat" that is required before injunctive relief may issue. *Continental Grp. Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (citations omitted). Thus, his request for an injunction prohibiting the DOC Defendants from using O.C. spray against him is denied.

B.  Exercise of Religion Claims

Plaintiff also brings claims under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, et seq. He has moved for a temporary restraining order/preliminary injunction based on alleged violations of his right to freely exercise his religion. Specifically, he claims the DOC Defendants denied him several religious accommodations while he was incarcerated at SCI-Forest on and after August 21, 2018. Here again, Plaintiff has failed to meet his burden of establishing a likelihood of success on the merits of these claims.

Plaintiff adheres to the Fellowship of Spiritual Science religion of which he is the founder and leader. *See* ECF No. 5, p. 10. He asks the Court to order the DOC Defendants to make the following accommodations:

- An individual diet ("Trinity diet"); ritualistic prayer . . . with ritualistic foods in a snack bag, namely one piece of fruit, 1 bag of cereal and one pack of graham crackers/cheese;
- A weekly day of union to receive three pieces of fruit, 1 bag of cereal and one pack of graham crackers/cheese;
- A celebration from December 31 to January 1 with "a feast of sheep, brown rice, green beans, wheat bread and fruits;"
- A "festival of enlightenment from August 7 to 15th each year with fried chicken, fried fish, wheat bread, a while pie, cheese, rice (not noodles) beans, corn and apple juice;"
- A prayer rug;
- A "seven week fast of enlightenment from June 26th to August 7th each year" with specialized meals during that time;
- To have his religion (of which he is the leader) listed on his religious preference form;
- Access to his religious books and a "religious box" in which to hold them;
- Access to his tablet to view religious writings while in the Strategic Threat Group Management Unit (STGMU).

*Id.* at p. 10-26.

1. Reasonable Likelihood of Success on the Merits

  a. Religious Diet Claims

The majority of Plaintiff's claims focus on the need for a specialized diet in order to practice his religion. An institutionalized person has a right to a special diet for religious reasons under both the First Amendment's Free Exercise Clause and RLUIPA. *See generally Washington v. Klem*, 497 F.3d 272, 276–86 (3d Cir. 2007) (RLUIPA); *DeHart v. Horn*, 227 F.3d 47, 50–61 (3d Cir. 2000) (First Amendment). The Court will begin with the First Amendment claim.

The First Amendment states that, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ..." U.S. Const, amend. I. "[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545, (1979) (citations omitted). "'Inmates clearly retain protections afforded by the First Amendment, ... including its directive that no law shall prohibit the free exercise of religion.'" *DeHart v. Horn*, 227 F.3d 47, 50 (3d Cir. 2000) (quoting *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987)).

But "[t]he mere assertion of a religious belief does not automatically trigger First Amendment protections. Only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." *Id.* at 51. Accordingly, "if a prisoner's request for a particular diet is not the result of sincerely held religious beliefs, the First Amendment imposes no obligation on the prison to honor that request." *Id.* at 52.

Plaintiff filed a declaration in which he states that he is the "revered magi for the Fellowship of Spiritual Science," that he is the Founder and Herald of that fellowship, and that he has been "devoted" to this faith for "3, going on 4 years straight." ECF No. 7-1, ¶ 13; ECF

No. 7, at 2. He further declares that, despite making numerous requests for religious accommodations, the Defendants have consistently refused to accommodate his religious requirements. *Id.* at ¶ 14-15. Plaintiff states that he cannot eat "60% of the food served" by the prison because it does not conform to his religious practice. ECF No. 7 at 4. He also claims to have lost a "sanificant [sic] amount of weight since entry into SCI-Forest," and that "the lack of medical care can serious [sic] put the plaintiffs [sic] life at risk and cause irreparable harm." *Id.*

The Plaintiff has not, however, identified how his requested special diet is related to the free exercise of his religion. His declaration contains no explanation or specifics regarding his religious practices or the tenets of his faith as they relate to the special foods he has requested, and instead merely states that his requests for accommodations have been denied. *See* ECF No. 7-1, ¶¶ 14-15. Thus, it is impossible for the Court to determine, based solely on the Plaintiff's declaration, whether his religious beliefs as the concern his requested special diet are sincerely held. Plaintiff was given an opportunity to elucidate this issue at the hearing on June 5, 2019, but his testimony failed to reasonably connect his demands with sincerely held tenets of his religion. At this juncture of the case and due to the paucity of evidence, the Plaintiff has not demonstrated a likelihood of success on the merits of his First Amendment claim. *See, e.g., Coleman v. Connections Community Support Programs, Inc.*, 2018 WL 2694446, at *3 (D. Del. June 5, 2018).

Further, Plaintiff acknowledged during the hearing on this matter that many, if not all, of the foods he demands are available to him, either through the dietary options offered generally by the prison or by purchasing the items through the commissary. This testimony further negates a reasonable likelihood of Plaintiff's success on the merits of his claim and any threat of immediate or irreparable harm.

The Plaintiff fares no better with his RLUIPA claim. Under that statute, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability," unless the government demonstrates that the burden is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that ... interest." 42 U.S.C. § 2000cc–1(a). RLUIPA creates strict scrutiny over governmental burdens on religious exercise. *See Klem*, 497 F.3d at 277. If plaintiff "produces prima facie evidence to support a claim alleging a [RLUIPA] violation ... the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether [the challenged practice or law] substantially burdens the plaintiff's exercise of religion." *Id.* § 2000cc–2(b). "[G]overnment" includes any official of a "State, county, municipality, or other governmental entity created under the authority of a State," as well as any other person "acting under color of State law." *Id.* § 2000cc–5(4)(A). A "substantial burden" under RLUIPA:

> exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

*Klem*, 497 F.3d at 281. RLUIPA does not permit a court to determine whether the belief or practice in question is "compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(a); *Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13 (2005). RLUIPA does permit inquiry into the sincerity of a prisoner's religious beliefs. *Cutter*, 544 U.S. at 725 n. 13. Instead, the threshold inquiry "in any First Amendment or RLUIPA case is whether the prison's challenged policy or practice has substantially burdened the practice of the inmate's religion." *Robinson v. Superintendent*, 693 Fed. Appx. 111, 115 (3d Cir. 2017) (citing *Klem*, 497 F.3d at

277-78). The Court can, however, "look behind the purported religious belief to the extent that we are questioning whether the belief is honestly held." *Id.* (citing *Cutter*, 544 U.S. at 725 n.13; *Africa;* 662 F.2d at 1032). So then, to have a reasonable likelihood of success on the merits under RLUIPA, the Plaintiff here must prevent some evidence that his religious beliefs are sincerely held. *See, e.g., Chase v. City of Philadelphia*, 2001 WL 2713749, *5 (E.D. Pa. July 13, 2011). He has not done so on this record.

As noted above, Plaintiff's declaration and testimony fail to provide any reasonable basis upon which to determine that his religious beliefs and, by extension, the need for the specialized diet, are sincerely held. To be clear, the Court is not inquiring into the validity of Plaintiff's religious beliefs as they relate to his requested diet. *See, e.g., Parkell v. Senato*, 2016 WL 7217623, at *8 (D. Del. Dec. 13, 2016) ("[I]n addressing a prisoner's request for a particular diet, the question is not whether such a diet is an orthodox requirement of a particular religion, but whether the prisoner's belief that such a diet is necessary is sincerely held and religious in nature in the prisoner's scheme of things.") (citations omitted). But Plaintiff has the burden of providing evidence from which the Court can ascertain whether his beliefs are "sincerely held" and he has not done so here.

The Defendants urge the Court to hold that Plaintiff's religion is anything but. Instead, they contend it is a thinly-veiled attempt to secure food items the Plaintiff prefers. *See* ECF No. 35, at 8-9. Of course, to be protected by the First Amendment or RLUIPA, one's beliefs must be religious. *See* 42 U.S.C. § 2000cc-5(7)(A).[6] But here, the Court need not make such a determination. Assuming that they are, the Plaintiff has provided the Court with no evidence from which to determine whether his beliefs are sincere or reasonable related to the relief he

---

[6] The statute does not define religion. Instead, RLUIPA states that religious exercise "included any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

requests. Further, while he claims that the Defendants' actions prevent him from practicing his religion, *see, e.g.,* ECF No. 7 at 3, he provides no evidence as to what those practices encompass—beyond the requirement of special meals and specific food items. *Id.* He claims that "draconian policys [sic]" prevent him from the practice of his faith, but he does not identify the objectionable policies nor provide any evidence from which the Court can discern the nature of his religious practices. *Jova v. Smith*, 582 F.3d 410, 415 (2d Cir. 2009) (quoting 29 U.S.C. § 2000cc-2(b)). Put another way, the Plaintiff has provided no evidence showing clearly how his requested diet is based on any particular religious requirement of his faith or how such foods constitute an exercise of religion. *See Keystone v. Ponton*, 2018 WL 4550452, *5 (W.D. Va. Sept. 21, 2018) (citing *Krieger v. Brown*, 496 Fed. Appx. 322, 325 (4th Cir. 2012).

Likewise, he has failed to show that he has been forced to eat any religiously proscribed food items, what such items may be, or "why he cannot simply discard nonconforming food items, if he received any." *Id.* Thus, the Plaintiff has not demonstrated a likelihood of success on the merits of his First Amendment and his RLUIPA claim or the threat of immediate or irreparable harm as to those claims. As a result, his request for injunctive relief is denied.

                b.      Use of a Prayer Rug, Tablet and an additional Religious Box

Plaintiff also seeks an order requiring the Defendants to provide him with "his rug from his property to pray on an object of worship that he can clean daily." ECF No. 7-1, at 4. But again, he provides no further evidence explaining why he needs such a rug or how it is connected to or a required component of his faith. In his brief in support of his motion, Plaintiff states that the denial of requested religious accommodations "hinder plaintiffs [sic] total ability to practice, or express his religious beliefs which are mandated via the doctrine and ethics of a seeker." ECF No. 7 at 5. This is not an explanation of the religious requirement of a prayer rug, but instead a

bald assertion that provides the Court no basis from which it can determine whether Plaintiff's belief in the need for a prayer rug is sincerely held or even related to his religion. Thus, because he fails to allege facts showing that the use of an in-cell prayer rug was required by his sincerely held religious beliefs, he has again failed to meet his burden. *See, e.g., Hinds v. Lewis*, 2019 WL 2223253, *7 (W.D. Mich. May 23, 2019) (Plaintiff's failure to allege facts showing that the use of in-cell keyboard produced music was required by his sincerely held religious beliefs defeats free exercise claim); *Burke v. Clarke*, 2019 WL 1370874, *5 (March 26, 2019) (Plaintiff offered no evidence that group religious services, religious items such as prayer rugs, flags, posters or portraits, hats or incense or holy day meals/feasts are tenets of his faith).[7] The same goes for his use of a Tablet and an additional religious box exemption. Plaintiff has provided no evidence as how the use of these items is a tenet of his religion.

Further, even if Plaintiff provided evidence to support a finding that his requested items are required by his sincerely held religious beliefs, it is unlikely that the Defendants' restrictions on those items constitute a substantial burden on his rights. For example, the Court of Appeals for the Third Circuit has held that the confiscation of a prayer rug furthered a legitimate penological objective and did not violate the First Amendment. See *Pressley v. Beard*, 266 Fed. Appx. 216, 218 (3d Cir. 2008). The Court of Appeals for the Tenth Circuit has likewise upheld the prohibition of inmates having a prayer rug in their cell based on prison officials' concern regarding prison safety and security. See *Hammons v. Saffle*, 348 F.3d 1250 (10th Cir. 2003). See also *Arguello v. Duckworth*, 106 F.3d 403 (7th Cir.1997) (affirming district court's grant of summary judgment against plaintiff challenging regulations prohibiting possession of certain

---

[7] At the hearing, the Plaintiff described how the prison's accommodation of the use of a towel instead of a prayer rug was unacceptable because a towel is washed in the laundry used for the general prison population and, therefore, would not be protected or sanctified. This is not however, an explanation of how a prayer rug relates to the tenets and requirements of the Fellowship of Spiritual Science.

14

religious artifacts). And Plaintiff makes no claim that the lack of a prayer rug, tablet or additional box prevented him from practicing his religion entirely. *See e.g., LaPointe v. Walker*, 2010 WL 3724274, at *4 (S.D. Ill. Sept.15, 2010) ("[T]he lack of access to a prayer rug did not substantially burden LaPointe's right to the free exercise of religion . . . LaPointe was free to practice his religion by alternative means ...."); see also, e.g., *Swank v. Tanner*, 2012 WL 3815635, at *4 (E.D. La. Sept.4, 2012) (similar). Thus, multiple grounds exist to demonstrate that Plaintiff is unlikely to succeed on the merits of his religious liberty claims and to negate a finding that he faces immediate or irreparable harm relative to those claims.

IV. Conclusion

Plaintiff has failed to provide the Court with evidence upon which to base a finding that his religious beliefs are sincerely held or that the accommodations he requests are related his religious beliefs. The Court further finds that Plaintiff has failed to demonstrate that he faces immediate or irreparable harm based upon the alleged conduct of the Defendants. Therefore, the Plaintiff's motion for preliminary injunction/temporary restraining order [ECF No. 6] is hereby DENIED.

So ordered.

_____
RICHARD A. LANZILLO
United States Magistrate Judge

Entered this 6th day of June, 2019.