IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

REV. AUGUSTUS SIMMONS ENOCH,    )
                                )
            Plaintiff           )        Case No. 1:19-cv-00026 (Erie)
                                )
vs.                             )
                                )
                                )        RICHARD A. LANZILLO
DAVID PERRY, J. SAWTELLER,      )        UNITED STATES MAGISTRATE JUDGE
LISA LAMOREAUX, SUTTERLANDER,   )
DEPUTY SECRETERY TREVOR         )
WINGARD, TRACY SMITH,           )
REV. ULRICH KLEMM, DEBRA RAND,  )        MEMORANDUM OPINION AND
DAN LEE, ROBERT LAWRENCE MAXA,  )        ORDER ON DEFENDANTS' MOTION
KIMBERLY SMITH, GARY PRINKEY,   )        TO DISMISS
KATHLEEN HILL, BONNE E. BELL,   )
ANDREW LESLIE, HEATHER          )        ECF NO. 82
KELLERMAN, CHAPPLON REV.        )
SHAFFER, CHAPPLON REV. SIBANDA, )
                                )
            Defendants          )

I.      Introduction

        Acting pro se, Plaintiff Augustus Simmons Enoch (Simmons), a prisoner in the custody of

the Pennsylvania Department of Corrections, commenced this civil rights action on February 5,

2019, by filing a motion for *in forma pauperis* status.[1]  The Court granted his motion and Simmons'

Complaint was docketed on February 12, 2019.  ECF Nos. 4, 5.  Simmons filed an Amended

Complaint on August 22, 2019, which is the operative complaint for these proceedings.  *See* ECF

No. 68.  The parties have consented to the jurisdiction of a United States Magistrate Judge to

---

[1] In filing his initial Complaint, Simmons called himself "Reverend Augustus Simmons Enoch" and in Amended Complaint he identifies himself as "Rev. Magi Augustus Enoch" and "Rev. Magi Augustus Osiris Enoch."  *See, e.g.*, ECF No. 5, p. 1; ECF 68, pp. 1, 7.  Although the docket lists him as "Augustus Simmons Enoch," the Court will refer to him as "Augustus Simmons" or "Simmons" because a review of the DOC's inmate locator service does not yield results for anyone named "Reverend Augustus Simmons Enoch" or "Magi Augustus Enoch" or "Rev. Magi Augustus Osiris Enoch."  *See* http://inmatelocator.cor.pa.gov (last consulted on May 29, 2020).  The Defendants also refer to him as "Simmons."

1

conduct all proceedings in this case.  *See* ECF Nos. 23, 24, 31, and 40.  Before the Court today is a Motion to Dismiss the Amended Complaint filed by several Defendants who are employees of the Pennsylvania Department of Corrections (DOC Defendants).  ECF No. 82.

II.     Legal Standards

A.     Motions to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, a court is not opining on whether a plaintiff is likely to prevail on the merits; instead, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009).  A complaint should only be dismissed under Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955 (rejecting the traditional Rule 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions.  *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955.  A "formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts in the complaint.  *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v.*

2

*Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the Court accept legal conclusions disguised as factual allegations.  *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955.  *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

B.     Pro Se Pleadings

For purposes of a motion to dismiss, a court must employ less stringent standards in considering pro se pleadings than when judging the work product of an attorney.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  When presented with a pro se complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).  In a §1983 action, the court must "apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)).  *See also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right

3

secured by the Constitution.").  Despite this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim.  *See, e.g.*, *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).  Finally, the United States Court of Appeals for the Third Circuit in *Phillips v. County of Allegheny* has ruled that if a District Court is dismissing a claim under Fed. R. Civ. P. 12(b)(6) in a civil rights case, it must sua sponte "permit a curative amendment unless such an amendment would be inequitable or futile."  515 F.3d 224, 245 (3d Cir. 2008).

With these standards in mind, the Court turns to a review of Simmons' claims against the DOC Defendants.

III.    The Complaint

Simmons' Amended Complaint is a hand-written document totaling more than eighty-two pages.  ECF No. 68.  It begins with the admission that he incorrectly listed "Doctor Byers" as a defendant in his initial complaint.  *See* ECF No. 5.  Simmons then releases Byers from this action.  ECF No. 68, p. 1.  The Amended Complaint then names eighteen individual defendants.  They can be divided into two groups: employees of the Pennsylvania Department of Corrections (DOC Defendants) and medical providers (Medical Defendants).  The Medical Defendants have not moved to dismiss.  Each of the DOC Defendants will be identified in the discussion of the claims associated with him or her, *infra*.

The Amended Complaint raises six claims.  *Id.* at pp. 74-76.  Counts I, II, and III appear to hinge on two separate instances of mistreatment involving the use of pepper spray, but there is some overlap in the allegations.  Counts IV, V, and VI (mislabeled in the Amended Complaint as Count V) relate to Simmons' self-proclaimed religion.  The following is a summary of Simmons' claims and the defendants against whom each claim is asserted:

4

| Count | Defendants | Relevant Paragraphs of Complaint | Type of Claim Raised |
|---|---|---|---|
| I | Perry, Lee, Sawteller, Lamoreaux, Suttlander, Maxa, Hill, Bell, Smith, Prinkey, Leslie, Kellerman | ¶¶ 16-39 | 8th Amendment |
| II | Maxa, Suttlander, Leslie, Lee, Perry | ¶¶ 40-45 | Conspiracy to commit 8th Amendment violations |
| III | Sawteller, Kellerman, Hill, Bell, Lee | ¶¶ 46-56 | Failure to protect, failure to supervise, supervisory liability for 8th Amendment violations |
| IV | Wingard, Smith, Klemm, Rand, Shaffer, Sibanda | ¶¶ 57-93 | 1st Amendment right to express/practice religion |
| V | Shaffer, Klemm, Smith, Rand, Wingard | ¶¶ 94-100 | Conspiracy to commit 1st Amendment violations/free exercise |
| VI | Shaffer, Sibanda, Klemm, Smith, Rand, Wingard | ¶¶ 101-103 | RLUIPA |

*Id.*

When considering a motion to dismiss, the Court must accept as true the factual allegations of the complaint and draw all reasonable inferences in the plaintiff's favor. *Imhoff v. Temas*, 67 F. Supp. 3d 700, 706 (W.D. Pa. 2014) (citing *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). So for the purposes of this decision, the essential facts are as follows.

A.      The Pepper Spray Claims

Simmons' first set of claims (Count I, II, and III) concern events that began on September 25, 2018. *Id.* at p. 13. On that date, Simmons was informed that he was being relocated from his present cell to a "phase 4" cell within the facility's Security Threat Group Management

5

Unit (STGMU). [2]  *Id.*  Simmons acknowledges that he had been housed in a "phase 3" cell and claims to have been waiting on a "promotion to phase 2 at the time of this incident."  *Id.*  Simmons asked for an explanation for his move to "phase 4" and, when none was proffered, admits to refusing to move from his cell.[3]  *Id.*  An extraction team was dispatched and "O.C. spray" was used against Simmons to dislodge him from his cell.[4]  *Id.* at p. 14.  Simmons asserts that he informed prison personnel that he was asthmatic and that his entreaties to cease the use of pepper spray were ignored.  *Id.*  He was sprayed twice and was then cuffed and removed from his cell.  *Id.*  His continued requests for his asthma pump/inhaler were denied.  *Id.*

Simmons asked for his inhaler again while being decontaminated but did not receive it.  *Id.* at p. 16.  He was then taken to a "dry cell" which the Amended Complaint describes as "a cell with nothing in it, no mattress, toilet paper, paperwork, or hygienics."  *Id.*  He claims that his asthma inhaler was "left on the c/o's desk."  *Id.*

Either that same day, or the next morning—the Amended Complaint is somewhat unclear— Simmons experienced "muscle pains in his chest and rib areas."  *Id.*  He also had trouble breathing and dizziness.  *Id.*  He again repeated his request for his inhaler but was informed that the medical department restricted him from having access to it.  *Id.* at p. 17.  Later that day, Simmons experienced severe muscle pain and difficulty breathing.  *Id.*  He alleges that he tried to push the

---

[2] This Court has explained that: "[T]he [STGMU] unit at SCI-Forest that houses and provides services to inmates with affiliations to security threat groups. The STGMU program includes several 'phases' through which an inmate can 'progress' over time by exhibiting appropriate behavior.  An inmate who progresses through each of the program's five phases qualifies for release into the prison's general population."  *Williams v. Lee*, 2020 WL 1536320, at *1 (W.D. Pa. Mar. 31, 2020) (internal citations omitted).

[3] But Simmons alleges that Defendant Lee told him that the move "involved a email of STG content."  ECF No. 68, pp. 13-14.

[4] The terms "pepper spray," "O.C. spray," and "mace" are used interchangeable in this Court's jurisprudence and denote the same thing.  *Wright v. Schick*, No. 1:18-CV-0118, 2020 WL 1083857, at *1 (W.D. Pa. Mar. 6, 2020); *Enoch v. Perry*, 2019 WL 2393783, *1, n.2 (W.D. Pa. June 6, 2019); *Benson v. Wetzel*, 2019 WL 2393799, *5 (W.D. Pa. June 6, 2019) (citing *Banks v. Mozingo*, 423 Fed. Appx. 123, 126-27 (3d Cir. 2011)).  Here, the Court will use the term "pepper spray."

emergency button in his cell but fell unconscious in the process. *Id.* Simmons regained

consciousness when prison personnel breached his cell and sprayed him with pepper spray. *Id.* He

was then taken to the medical department where his request for his inhaler was again denied. *Id.*

Simmons alleges continuing medical difficulties resulting from his exposure to the pepper

spray. For example, he alleges that on September 27, 2018, he complained about chest pain and

difficulty breathing, but was not provide treatment. *Id.* at p. 19. On December 13, 2018, Simmons

was seen again and his requests for his inhaler were denied. *Id.* He also contends that on

January 11, 2019, after reporting severe breathing difficulties, he was again denied his inhaler. *Id.* at

p. 20. He also reports trouble breathing on April 13, 2019, at which time he was provided with an

inhaler. *Id.* at p. 22.

B.      Religious Retaliation Claims

In Count IV and Count V, Simmons contends that the prison unconstitutionally denied him

various accommodations for his religion. He identifies himself as the founder of a religion known as

the Fellowship of Spiritual Science (FSS). *Id.* at pp. 35-36; *see also Simmons v. Gilmore*, 2019 WL

2422568, at *1 (W.D. Pa. June 10, 2019), *aff'd*, 2019 WL 2743954 (W.D. Pa. July 1, 2019). The

Amended Complaint outlines, in detail, the precepts of the FSS. *See* ECF No. 68, pp. 36-40.

Simmons alleges that the prison denied his several requests for accommodations needed to practice

his faith, including but not limited to such things as special meals/diet, books, and an official name

change. *Id.* at pp. 42-43.

As relief, the Amended Complaint asks for an injunction prohibiting the DOC from using

pepper spray against him, or on any prisoner with asthma. *Id.* at pp. 74-75. Simmons also asks for

$10,000 in damages for the DOC Defendants' retaliatory conduct and asks this Court to order the

Department to remove the DOC Defendants from their official duties. *Id.* He also asks for

punitive damages of $10,000 as well as his costs.  *Id.* at pp. 77-80.  All of the DOC Defendants have been sued in their official and individual capacities.

IV.     Discussion and Analysis

      A.     Purported class action claims are dismissed with prejudice.

Before turning to the claims themselves, the Court first notes language in the Amended Complaint that might be interpreted as Simmons' attempt to raise a class action.

Simmons begins his Amended Complaint by stating that he

> [n]ow makes claims in (sic) behalf of himself and all those equally
> affected (sic) in the Department of Corrections who suffer or could
> possibly suffer the same redress from the violations under the
> following violations of laws established here.

*Id.* at p. 6.  Simmons then recites various provisions of the Universal Declaration of Human Rights, the "United Nations Bill of Rights," and the First, Eighth, and Fourteenth Amendments to the Constitution of the United States.[5]  *Id.* at pp. 6-8.  As much as this statement can be construed as Simmons' attempt to raise claims on behalf of others through a class action, such claims are dismissed.  A prisoner proceeding pro se may not seek relief on behalf of his fellow inmates.  This is because "the [a]bility to protect the interests of the class depends in part on the quality of counsel, and … the competence of a layman representing himself [is] clearly too limited to allow him to risk the rights of others."  *Brown v. Wetzel*, 2019 WL 1331619, at *7 (W.D. Pa. Mar. 25, 2019) (quoting

---

[5] The Universal Declaration of Human Rights is a declaration adopted by the United Nations General Assembly on December 10, 1948 in Palais de Chaillot, Paris. While not a treaty itself, the Declaration was explicitly adopted by the United Nations for the purpose of defining the meaning of the words "fundamental freedoms" and "human rights" appearing in the United Nations Charter which is binding on all member states, including the United States.  *See, e.g., Carter v. Pennsylvania Dep't of Corr.*, 2008 WL 5250433, at *3 (E.D. Pa. Dec. 17, 2008).  Furthermore, although Simmons invokes the Fourteenth Amendment in his Amended Complaint, this cannot provide the basis for a claim on these facts as any Fourteenth Amendment claim is subsumed by the more explicit text of the Eighth Amendment.  *Wright v. Schick*, 2020 WL 1083857, at *3 (W.D. Pa. Mar. 6, 2020) (citing *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).  In the prison context specifically, "the Eighth Amendment serves as the primary source of substantive protection."  *Graham v. Conner*, 490 U.S. 386, 395 n.10 (1989) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

*Marmolejos v. Global Tel*Link Corp.*, 2019 WL 981882, at *2 (W.D. Pa. Jan. 9, 2019) (internal quotation marks and citations omitted).

B.     Claims brought against the DOC Defendants in their official capacities will be dismissed.

As stated above., Simmons has sued all of the DOC Defendants in their official capacities. *Id.* at pp. 1-6.  Simmons cannot assert such claims and they will be dismissed.

Personal capacity suits under § 1983 seek to recover money from a government official, as an individual, for acts performed under color of state law.  Official capacity suits, on the other hand, generally represent an action against an entity of which the government official is an agent.  *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978). When suits are brought against state officials in their official capacities, those lawsuits are treated as suits against the state.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  However, the doctrine of sovereign immunity, established by the Eleventh Amendment, protects states, such as the Commonwealth of Pennsylvania, from suits by citizens.  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-01, 117 (1984); *Seminole Tribe v. Florida*, 517 U.S. 44, 54, 116 S. Ct. 1114, 1122, 134 L. Ed.2d 252, 265 (1996); *Lavia v. Pennsylvania*, 224 F.3d 190, 195-96 (3d Cir. 2000).  That immunity runs to state officials if they are sued in their official capacity and the state is the real party upon which liability is to be imposed.  *Scheuer v. Rhodes*, 416 U.S. 232, 237-38 (1974).

Congress has not abrogated the immunity regarding Simmons' claims, nor has Pennsylvania waived this grant of immunity.  *See* 42 PA. CONS. STAT. ANN. § 8521(b).  Also, the allegations of the Amended Complaint do not fall under any one of the nine listed categories for which immunity

has been waived by the Commonwealth of Pennsylvania.[6]  *See* 42 Pa. Cons. Stat. Ann. § 8522(b).

Hence, Simmons' claims for money damages against the DOC Defendants in their official capacities

are barred by sovereign immunity.  *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir.

2010).

      C.       The Claims Relating to the Pepper Spray Incidents (Count I, II, and III)

      Simmons has sued DOC Defendants Perry, Lee, Sawteller, Hill, Bell, Smith, Prinkey, and

Kellerman for violating his Eighth Amendment rights in connection with the use of pepper spray

against him on two occasions.  ECF No. 68, p. 8.  These accusations are contained in Count I.

Viable claims arising out of a discharge of pepper spray typically fall within one or both of these

categories: conditions of confinement (excessive force) and deliberate indifference to serious

medical needs.  *Wright v. Schick*, 2020 WL 1083857, at *3 (W.D. Pa. Mar. 6, 2020) (citing *Robinson v.

Danberg*, 673 Fed. Appx 205, 212 (3d Cir. 2016).  Simmons has made both types of allegations.

      1.       The Excessive Force Claims Raised in Count I

      As for the use of pepper spray, the Court of Appeals for the Third Circuit has instructed

that:

> [the] use of tear gas is not "a per se violation of the Eighth
> Amendment...." *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984).
> Rather, "[t]he use of mace, tear gas or other chemical agent of the
> like nature when reasonably necessary to prevent riots or escape or to
> subdue recalcitrant prisoners does not constitute cruel and inhuman
> punishment." *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984). *See
> also Michenfelder v. Sumner*, 860 F.2d 328, 336 (9th Cir. 1988) (policy
> allowing use of taser guns on inmate who refused to submit to a strip
> search does not constitute cruel and unusual punishment); *Spain v.
> Procunier*, 600 F.2d 189, 195 (9th Cir. 1979) (the use of tear gas "in
> small amounts may be a necessary prison technique if a prisoner

---

[6] The nine categories for which sovereign immunity will not apply are: (1) vehicles in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) the care, custody, or control of personal property; (4) a dangerous condition of Commonwealth agency real estate and sidewalks; (5) dangerous conditions of highways created by potholes or sinkholes; (6) the care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. *See* 42 PA. CONS. STAT. ANN. § 8522(b).  *See also Gantz v. Garman*, 2020 WL 2468474, at *5 n.2 (M.D. Pa. May 13, 2020).

> refuses after adequate warning to move from a cell or upon other
> provocation presenting a reasonable possibility that slight force will
> be required."); *Clemmons v. Greggs*, 509 F.2d 1338, 1340 (5th Cir. 1975)
> (the use of tear gas when reasonably necessary to subdue recalcitrant
> prisoners does not violate the Eighth Amendment).

*Passmore v. Ianello*, 528 Fed. Appx. 144, 147-48 (3d Cir. 2013). That does not mean, however, that its

use cannot amount to a constitutional violation. *Wright,* 2020 WL 1083857, at *3. The Court of

Appeals for the Third Circuit has instructed that "the pivotal inquiry in reviewing an inmate's § 1983

claim for excessive force is 'whether force was applied in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm.'" *Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir.

2018) (quoting *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)). To determine whether force was

used in "good faith" or "maliciously and sadistically," there are several factors to consider: (1) "the

need of the application of force"; (2) "the relationship between the need and the amount of force

that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff

and inmates, as reasonably perceived by responsible officials on the basis of the facts known to

them"; and (5) "any efforts made to temper the severity of a forceful response." *Brooks v. Kyler*, 204

F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley*, 475 U.S. at 321). When considering these factors, the

Court may make inferences about "whether the use of force could plausibly have been thought

necessary" or whether the circumstances show "such wantonness with respect to the unjustified

infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. 312,

312 (1986)(citation omitted).

        a.    The claim of excessive force in connection with the cell extraction on
            September 25, 2018 will be dismissed.

As noted, Simmons alleges two distinct Eighth Amendment violations relating to the use of

pepper spray: one during the cell extraction on September 25, 2018, and one which occurred the

next day while Simmons lay unconscious in his cell. Simmons' excessive force claim relating to the

first incident fails because it is devoid of factual allegations that the pepper spray was used in a

malicious or sadistic manner.  Here, Simmons has pleaded himself into a corner.  The Amended

Complaint admits that he refused to leave his cell, after being asked twice to do so.  Thus, he is the

"recalcitrant" prisoner contemplated by the Court of Appeals in *Passmore*, *supra*.  *See* ECF No. 68, p.

13 ("Plaintiff requested from correctional staff a reason why he was being demoted from his current

phone and <u>refused to move</u>.") (emphasis added).  That is, the only factual averments pertaining to

this incident are that Simmons refused to leave his cell, an extraction team arrived at Simmons' cell,

Simmons still refused to leave his cell, that Simmons was sprayed twice, and was then forcibly

removed from his cell.  ECF No. 68.  Because he acknowledges refusing to vacate when required,

these allegations cannot state a plausible claim that Lee, or another DOC Defendant, deployed

pepper spray against Simmons in violation of the Eighth Amendment.  *See Taylor v. Pennsylvania*, 2018

WL 6574187, at *17 (E.D. Pa. Dec. 12, 2018), *aff'd sub nom. Taylor v. Dist. Attorneys Office*, 802 Fed.

Appx 701 (3d Cir. 2020).  *See also Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979) (the use of tear

gas "in small amounts may be a necessary prison technique if a prisoner refuses after adequate

warning to move from a cell or upon other provocation presenting a reasonable possibility that

slight force will be required."); *Angle v. Murin*, 2014 WL 1316105, at *2 (W.D. Pa. Mar. 28, 2014)

(find no excessive force where inmate had been issued "numerous orders and opportunities to

comply with the search prior to the application of force, to which he refused.").

Simmons does allege that the use of pepper spray was in retaliation "for his religious

practices and expression at SCI-Forest STGMU, so he refused to move."  ECF No. 68 at p. 14.

Retaliation for the exercise of a constitutionally protected activity is itself a violation of rights

secured by the Constitution, which is actionable under § 1983.  *Mayo v. Newman*, 2019 WL 1226810,

at *9 (W.D. Pa. Mar. 15, 2019) (citing *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001); *White v. Napoleon*,

897 F.2d 103, 112 (3d Cir. 1990)).  But merely alleging an act retaliation is insufficient to state a

retaliation claim.  *Id.*  Instead, a plaintiff must sufficiently show three things: (1) that the conduct in

which he engaged was constitutionally protected; (2) that he suffered "adverse action" at the hands

of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating

factor in the defendants' conduct.[7]  *Rauser*, 241 F.3d at 333 (adopting *Mount Healthy Bd. of Educ. v.*

*Doyle*, 429 U.S. 274, 287 (1977) ).

Assuming without deciding that Simmons has pleaded the first two, he has not alleged facts

to support the last requirement.  Instead, Simmons acknowledges that the substantial motivating

conduct in the use of force against him was his own refusal to move cells.  The Amended Complaint

admits that Simmons announced his refusal to move even before Lee came to his cell:

> When he was advised by security staff that he would be moved back
> to phase 4 from his current phase on the STGMU (Plaintiff at the
> time was on phase 3 waiting a promotion to phase 2 at the time of
> the incident).  Plaintiff requested from correctional staff a reason why
> he was being demoted from his current phase <u>and refused to move</u>).

ECF No. 68, p. 13, ¶ 19 (emphasis added).  Thus, the Amended Complaint connects the use of

force to Simmons' refusal to move cells.  Simmons' unsupported assertion that he "knew this was a

direct attact (sic) and retaliation for his religious practices and expression" makes little sense, given

that he acknowledged his own refusal to leave the cell and that Lee was aware of this refusal when

he came to see him.  Thus, Simmons' attempt to plead a retaliation claim fails as well.

   b.  The Claim concerning the use of pepper spray while Simmons was
      unconscious will not be dismissed.

The Amended Complaint also mentions a second incident involving the use of pepper spray.

The evening after the first incident, the Amended Complaint states that Simmons "fell out

unconcise (sic) from lack of oxygen.  Plaintiff was awaken (sic) from his unconcise (sic) state from a

---

[7] The crucial third element, causation, requires a plaintiff to prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.  *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997).

explosive sound in his cell, it was the correctional staff on duty utilizing deadly use of force again on Plaintiff via planed (sic) use of deadly force.  The officers used O.C. spray on plaintiff while he layed unconcise on his cell floor."  ECF No. 68, p. 17.  This claim will not be dismissed.

Here, although the use of pepper spray by an officer to secure compliance with an order would not seem to be objectively unreasonable,  the same cannot be said for the later use of the spray, given Simmons' claim that he was unconscious.  In other words, the Amended Complaint alleges that the pepper spray should not have been used on Simmons' while he was unconscious because the object of its usage was no longer to secure compliance but to inflict needless pain.  *See Morgan v. Barnett*, 2012 WL 1033507, at \*7 (N.D. Tex. Mar. 22, 2012), *report and recommendation adopted*, 2012 WL 1193741 (N.D. Tex. Apr. 10, 2012) (claim of excessive force stated where guards sprayed an unconscious inmate who had hanged himself).  At this stage, accepting Simmons' specific factual allegations as true, as the Court must, the Amended Complaint states a claim of excessive force against the DOC Defendants for the second use of pepper spray while Simmons was unconscious.

> 2.    Simmons' claim of deliberate indifference to a serious medical need in connection to the use of pepper spray will proceed.

Simmons also tries to plead an Eighth Amendment claim based on the treatment he received as a result of the use of pepper spray.  He claims DOC Defendants denied him access to his inhaler on numerous occasions after being sprayed with pepper spray.  He faults Defendant Bell, for example, for not providing him with his asthma inhaler after being sprayed.  ECF No. 68, p. 16.  He also claims he was denied his inhaler by "correctional officers" when placed in a "dry cell."  When asked about his inhaler the night after being sprayed, he claims that "staff stated that unit manager Lee, and medical have restricted me from access to anything including my inhaler."  *Id.* at 17.  After being sprayed a second time, the Amended Complaint states that Defendant Kellerman denied him the use of his inhaler.  *Id.*

14

A prison official violates the Eighth Amendment when: (1) the prisoner suffers an objectively, sufficiently serious deprivation; and (2) the prison official acts with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Fortune v. Hamberger*, 379 Fed. Appx 116, 122 (3d Cir. 2010) ("an inmate [is required] to show that 'he is incarcerated under conditions posing a substantial risk of serious harm,' and that prison officials demonstrated a 'deliberate indifference' to his health or safety"). Under the first element, a "prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834. To establish deliberate indifference under the second element, the prison official must: (1) know of and disregard an excessive risk to inmate health or safety; (2) be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists; and (3) draw the inference. *Id.* at 837.

Simmons has sufficiently alleged facts to withstand dismissal at this early stage of the proceeding. First, he alleges that he requires an inhaler for an asthma attack and that a medical order prohibiting the use of pepper spray against him plausibly alleges the objective prong that he suffers from a condition "diagnosed by a physician as mandating treatment." *Sanchez v. Pescador*, 2019 WL 5577946, at *6 (D. Colo. Oct. 29, 2019) (citation omitted). And second, Simmons plausibly alleges the subjective component by asserting that the DOC Defendants knew of his asthma condition. The Amended Complaint claims that "upon entry into SCI Forest from SCI Greene, Plaintiff underwent a medical examination," and that during that process he related his history of asthma. ECF No. 68, p. 12. He reported experiencing symptoms, including difficulty breathing, "two days per week" and that he used an inhaler "2 days per week." *Id.* Simmons claims that the use of his inhaler "never came into question nor was discontinued for year while at SCI Forest." *Id.* He also alleges that he "yelled from his cell that he had asthma when he noticed staff had the cans of O.C. spray." *Id.* at p. 14. The DOC Defendants still "denied [Simmons] access to his rescue inhaler"

15

after they used pepper spray against him.  *See, e.g., Stroman v. Wetzel,* 2020 WL 1531325, at *4 (M.D. Pa. Mar. 31, 2020) (denial of inhaler after use of pepper spray).

Finally, it has long been recognized that "individual public officers [are] liable for punitive damages for their misconduct on the same basis as other individual defendants."  *Smith v. Wade*, 461 U.S. 30, 35, 103 S. Ct. 1625, 75 L. Ed.2d 632 (1983).  In order to qualify for a punitive damages award, "the defendant's conduct must be, at a minimum, reckless or callous.  Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard."  *Imhoff*, 67 F. Supp. 3d at 712 (citing *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3rd Cir.1989)).  Here, and again at this early stage, Simmons' allegations of the intentional denial of medical treatment and excessive use of force while unconscious are sufficient to set forth a plausible claim for punitive damages.

        3.        The Conspiracy Claim stated at Count II will be dismissed.

To state a conspiracy claim under § 1983 a plaintiff must also establish the elements of a civil conspiracy.  *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974) (relying on Pennsylvania civil conspiracy law to set forth the elements).  A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the main element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.  *Noble v. Wetzel*, 2020 WL 3211893, at *6 (W.D. Pa. May 11, 2020), *report and recommendation adopted*, 2020 WL 3196261 (W.D. Pa. June 15, 2020).  The agreement can be shown by direct or circumstantial evidence.  But [a plaintiff] cannot base [his or her] claim solely on suspicion and speculation.  *Id.* (citing *Dice v. Johnson*, 711 F. Supp. 2d 340, 357 (M.D. Pa. 2010) (some internal citations and quotation marks omitted).  *See also Talley v. Varner*, 786 Fed. Appx 326, 329 (3d Cir. 2019) (citing *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (noting the "mere general allegation ... [or] averment of conspiracy or collusion without

alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient [to state a claim]" (alterations in original) (quoting *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1400 (D. Del. 1984)).

Here, Simmons' lone allegation of conspiracy is lodged against DOC Defendant Perry: "David Perry conspired to retallate (sic) when he order (sic) correctional staff Ellenberger on behalf of medical (as a proxy) to confiscate Plaintiffs (sic) inhaler). ECF No. 68 at p. 27, ¶ 44. This claim will be dismissed because Simmons has failed to state a conspiracy claim; he has not pleaded or asserted "any fact that supports his allegation." Conclusory allegations such as this do not give rise to a conspiracy claim. *See, e.g.*, *Brown v. Prison Health Servs.*, 2013 WL 6139646, at *1 n.2 (E.D. Pa. Nov. 20, 2013).

4.     The Failure to Protect/Supervisory Liability Claims (Count III)

At Count III, Simmons alleges that DOC Defendants Sawteller, Kellerman, Hill, Bell, and Lee failed to protect him from lethal harm. ECF No. 68 at p. 28, ¶ 46. He claims that these Defendants had "advanced knowledge of the deadly affects of O.C. spray against those with chronic illness such as asthma" yet they "deviated" from prison policy and permitted its use against him. *Id.* at pp. 33-34, ¶ 51.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care, and personal safety. *See Hill v. Edinger*, No. 3:CV-13-2442, 2015 WL 1164202, at *5 (M.D. Pa. Mar. 13, 2015) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994); *Helling v. McKinney*, 509 U.S. 25, 31, 113 S. Ct. 2475, 125 L. Ed.2d 22 (1993)). Under *Farmer*, an inmate must surmount the high hurdle of showing that a prison official knew or was aware of a substantial risk to inmate safety and deliberately disregarded that risk. *Id.* (citing *Beers–Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)). This requirement of actual

knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Simmons devotes several pages of his Amended Complaint to a recitation of the DOC's Code of Ethics as well as the DOC's use of force policy. But to state a failure to protect claim, the Amended Complaint must show that the defendant (1) knew that another officer was using excessive force against the inmate; and (2) the defendant had a realistic opportunity to intervene but did not do so. *Morgan-Hicks v. New Jersey Dep't of Corr.*, 2020 WL 1983705, at *11 (D.N.J. Apr. 24, 2020) (citing *Smith v. Mensinger*, 293 F.3d 641, 652 (3d Cir. 2002); *Evans v. Cameroon*, 442 Fed. Appx 704, 707 (3d Cir. 2011)). Because the Amended Complaint makes no allegation that Defendants Sawteller, Kellerman, Hill, Bell, and Lee had an opportunity to intervene or could do so, this claim will be dismissed. Simmons has not asserted that any of these DOC Defendants were present at either incident of pepper spray. *See Allen v. Eckard*, 804 Fed. Appx 123, 126 (3d Cir. 2020) (finding no failure to protect claim stated when defendants were not alleged to be present at the scene). This claim will be dismissed without prejudice, however, in the event that Simmons has additional facts to place these DOC Defendants at the scene and that they had an opportunity to intervene.

C.     The Religious Deprivation Claims (Counts IV, V, VI)

The second half of Simmons' Amended Complaint concerns allegation of religious deprivations imposed on him by several DOC Defendants. ECF No. 68, pp. 57-103. He raises both constitutional claims as well as statutory violations and these can be further divided into two sub-groups: claims relating to events that took place at SCI-Greene, beginning on December 23, 2016, and claims at SCI-Forest, beginning on April 12, 2018. ECF No. 68, pp. 43-60.

At Count IV, Simmons attempts to raise a First Amendment freedom of expression claim against DOC Defendants Wingard, Smith, Klemm, Rand, Shaffer, and Sibanda for incidents that

took place at SCI-Greene.  *Id.* at p. 36, ¶ 57.  He claims that "since August 7, 2016, the defendants named in this claim violated plaintiffs right to express his religion."  *Id.* at p. 40, ¶ 65.  For example, the Amended Complaint states that after conducting an interview, Defendant Sibanda told Simmons that "the chapallancy (sic) at SCI Greene would not accommodate his religious expression and or practice."  *Id.* at pp. 41-42, ¶ 68.  Simmons then alleges that Sibanda and the prison's religious accommodation committee denied every request he made for a religious accommodation of his religious practices.[8]  *Id.* pp. 42-43.  The Amended Complaint alleges that this denial of his free exercise rights was continued by Defendant Shafer after Simmons' transfer to SCI-Forest.  *Id.* at p. 44-46.

Simmons brings claims under both the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), *see* 42 U.S.C. § 2000cc–1.  *Id.*  The Free Exercise Clause prohibits prison officials from denying an inmate "a reasonable opportunity of pursuing his faith."  *See Cruz v. Beto*, 405 U.S. 319, 322 & n. 2 (1972).  To evaluate whether prison regulations violate an inmate's First Amendment right to possess publications, a court must employ the "reasonableness" test set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987).  The *Turner* analysis is exceedingly fact-intensive and does not lend itself to resolution on a motion to dismiss.  *Ramirez v. Pugh*, 379 F.3d 122, 128 (3d Cir. 2004).  Thus, Simmons' First Amendment claims require additional factual development to be fairly considered.   For these reasons, the Court finds that Simmons' First Amendment claims as stated in Count IV should not be dismissed at this time without the parties being afforded the opportunity to engage in discovery and submit a developed factual record.  *See, e.g., Dean v. Tice*,  2020 WL 3037194, at *3 (W.D. Pa. May

---

[8] The Amended Complaint does not identify the members of this Committee nor raise any specific allegations against them.

13, 2020), *report and recommendation adopted*, 2020 WL 3036630 (W.D. Pa. June 5, 2020); *Arnold v. Smith*, 2020 WL 362691, at *5 (M.D. Pa. Jan. 22, 2020).[9]

The same holds true for the statutory claims alleged in Count VI.  RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution."  42 U.S.C. § 2000cc-1.  To assert a viable RLUIPA claim, Simmons must establish that he had a sincerely held religious belief and that a prison policy or official practice substantially burdened his exercise of that belief.  *See Holt v. Hobbs*, 574 U.S. 352, 360 (2015).  Under RLUIPA, a "substantial burden" is one where: (1) a prisoner is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning a precept of his religion to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs. *See Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007).  In *Holt v. Hobbs*, the Supreme Court explained that "RLUIPA protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief[.]'" 135 S. Ct. 853, 862 (2015) (quoting 42 U.S.C. § 2000cc-5(7)(A) ). RLUIPA provides " 'greater protection' for religious liberty than is provided by the First Amendment." *Payne v. Doe*, 636 Fed. Appx. 120, 124 (3d Cir. 2016) (citing *Hobbs*, 135 S. Ct. at 863).

As alleged in the Amended Complaint, Simmons adheres to a self-actualized religion, the Fellowship of Spiritual Science.  *See gen.* ECF No. 68.  He asserts that the DOC Defendants refused to accommodate his religious beliefs, *id.* at pp. 41-42, ¶¶ 68-69, and declined to "assist plaintiff in this madness he called a religion," *id.* at p. 42, ¶ 71.  Based on these allegations, the Court is satisfied that Simmons has pled facts sufficient to show that the DOC Defendants substantially burdened his

---

[9] Simmons has asserted a number of allegations that, when read together, could assert a conspiracy claim.  At this stage of proceedings, the issue is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 583.  Accepting as true the facts as set forth by Simmons, the Defendants' motion to dismiss his conspiracy claim at Count V is denied.

sincerely held religious beliefs.  However, in reviewing a motion to dismiss, the District Court cannot conclude "on the basis of the pleadings alone" whether the Government has met its burden under the RLUIPA.  This is because "[t]he feasibility of a religion accommodation usually is a fact-intensive inquiry [and] the defendants cannot meet their burden of proof without at least creating a summary judgment record." *Robinson v. Superintendent*, 693 Fed. Appx. 111, 117 (3d Cir. 2017).  Thus, the claims brought at Counts IV, V, and VI of the Amended Complaint will not be dismissed.

V.      Conclusion

Given the foregoing, the DOC Defendants' motion to dismiss will be granted in part and denied in part.  Simmons' purported class action claims and claims against the DOC Defendants in their official capacities are dismissed with prejudice.  Simmons' claim of excessive force relating to the use of pepper spray in the first instance (September 25, 2018) will be dismissed, without prejudice.  The motion to dismiss will be denied in all other aspects.

**ORDER**

Upon consideration of the DOC Defendants' motion to dismiss (ECF No. 82), it is ordered that the motion is granted in part and denied in part, as follows:

1.      The motion is GRANTED as to Plaintiff's purported class action claims and claims against the DOC Defendants in their official capacities, and these claims are dismissed with prejudice

2.      The motion is GRANTED as to Plaintiff's excessive force claim in Count I of the Complaint relating to the first use of pepper spray against him on September 25, 2018, and this claim is dismissed without prejudice.

3.      The Defendants motion to dismiss is DENIED as to all other claims of the Amended Complaint.

Entered and orders this 20th day of July, 2020.


_____
RICHARD A. LANZILLO
United States Magistrate Judge