IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | | |
|---|---|---|
| REV. AUGUSTUS SIMMONS ENOCH, | ) | 1:19-CV-00026-RAL |
| Plaintiff | ) | RICHARD A. LANZILLO<br>UNITED STATES MAGISTRATE JUDGE |
| vs. | ) | |
| DAVID PERRY, J. SAWTELLER, BYER, LISA LAMOREAUX, SUTTERLANDER, LPN JANE DOE, DEPUTY SECRETERY TREVOR WINGARD, TRACY SMITH, REV. ULRICH KLEMM, DEBRA RAND, DAN LEE, ROBERT LAWRENCE MAXA, KIMBERLY SMITH, GARY PRINKEY, KATHLEEN HILL, BONNE E. BELL, ANDREW LESLIE, HEATHER KELLERMAN, CHAPPLON REV. SHAFFER, CHAPLLON REV. SIBANDA, | ) | MEMORANDUM OPINION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>ECF NO. 160 |
| Defendants | ) | |

Presently before the Court is a motion for summary judgment filed by Defendants Lamoreaux, Leslie, Maxa, and Sutterlander ("Medical Defendants"). *See* ECF No. 160. For the reasons explained below, the motion will be GRANTED.

I. Procedural History and Material Facts[1]

Plaintiff Augustus Simmons Enoch ("Simmons"), representing himself, commenced this civil rights action against the four Medical Defendants and fourteen individuals who are employed by the Pennsylvania Department of Corrections at the DOC's State Correctional

[1] Having previously detailed this case's lengthy procedural history and factual background in its Memorandum Opinion of July 20, 2020, *see* ECF No. 101, the Court will note only those facts and docket activities directly relevant to the pending motion.

Institution at Forest, where Simmons is incarcerated.[2] Simmons' Amended Complaint is his operative complaint. *See* ECF No. 68. The fourteen Defendants employed by the DOC ("DOC Defendants") filed a motion to dismiss certain of Simmons' claims pursuant to Fed R. Civ. P. 12(b)(6). The Court addressed that motion in its Memorandum Opinion of July 20, 2020. ECF No. 101. The Medical Defendants filed an Answer to the Amended Complaint. ECF No. 88. Discovery is complete, and the Medical Defendants have now moved for summary judgment. *See* ECF No. 160.

The following facts are taken from the Medical Defendants' Concise Statement of Material Facts (ECF No. 162) and Simmons' response thereto (ECF No. 180).[3] On September 25, 2018, Simmons was twice sprayed with oleoresin capsicum ("OC") spray by DOC personnel despite his protestations that he suffered from asthma. *See* ECF No. 68, ¶ 22. He was sprayed again on September 26, 2018 while he was unconscious in his cell. *Id.*, ¶ 25-28. Simmons claims that DOC personnel confiscated his inhaler at that time and that—despite his asking for it—DOC personnel failed to return it to him. *Id.* The discharge of OC spray, he contends, resulted in asthma attacks and ongoing breathing problems. *Id.*, ¶ 31-36. Simmons claims the Medical Defendants delayed necessary medical care and provided him with substandard care. His Amended Complaint includes two counts against the Medical Defendants. First, Simmons claims that the Medical Defendants violated his Eighth Amendment right against cruel and

---

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case. *See* ECF Nos. 23, 24, 31, and 40.

[3] Simmons has filed one document in response to the Medical Defendants' motion, which he states constitutes his "response to medical defendants (sic) motion for summary judgment, with their brief in opposition to support and their concise statement of material facts filed therein." This filing does not comply with our Local Rule 56(C), which requires a Responsive Concise Statement, "separately filed" and "which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts." *See* LCvR 56(C)(1)(a)-(c). Our Local Rule also requires a separately filed "memorandum in opposition" and an appendix, neither of which Simmons has filed. *See* LCvR 56(C)(1)-(2).

unusual punishment by failing to provide him with a replacement inhaler and by not treating him for pulmonary fibrosis. *Id.*, ¶¶ 16-39 (Count I). Second, Simmons contends that the Medical Defendants conspired and retaliated against him through their refusal to respond to his sick call requests relating to his asthma. *Id.*, ¶¶ 41-45 (Count II).

II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden

of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "[A] pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Martin v. Wetzel*, 2021 WL 2926005, at *3 (W.D. Pa. July 12, 2021) (quoting *Damson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (other citation omitted)). Put another way, just because a non-moving party is proceeding pro se, he is not relieved of their "obligation under Rule 56(c) to produce evidence that raises a genuine issue of material fact." *Id.* (quoting *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000)); *see also Winfield v. Mazurkiewicz*, 2012 WL 4343176, *1 (W.D. Pa. Sept. 21, 2012).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When the nonmoving party bears the burden of proof, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). With this standard in mind, the Court will assess whether the record supports any genuine issues of material fact pertinent to Simmons' claims against the Medical Defendants.

III. Discussion and Analysis

A. Medical Defendants Maxa and Leslie are entitled to summary judgment on Simmons' Eighth Amendment deliberate indifference claim.

To support a claim for violation of his Eighth Amendment right to adequate medical care, a prisoner must produce evidence to support findings that (1) he had a serious medical need, and (2) the defendant was aware of this need and was deliberately indifferent to it. *See West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978); *see also Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987). The defendant's "acts or omissions" must have been "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *accord White v. Napoleon*, 897 F.2d 103, 109 (3d Cir.1990). Either actual intent or recklessness will afford an adequate basis to support a finding of deliberate indifference. *See Estelle*, 429 U.S. at 105.

The seriousness of a medical need may be demonstrated by showing that it is "'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J. 1979)). Moreover, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Id.* Here, the Court will assume, without deciding, that Simmons' asthma presented a serious medical need.[4] *See, e.g.,*

---

[4] In doing so, however, the Court observes that there is little evidence in the record that Simmons' asthma rose to a level of a "serious medical need." *See, e.g., Seldon v. Wetzel*, 2021 WL 2877811, at *7 (W.D. Pa. May 13, 2021). Indeed, Simmons has not shown that his asthma imposed any limitations on his daily activities (he was noted to have been jogging in his cell, for example) and in many of his numerous medical appointments relating to his exposure to OC spray, Simmons failed to even complain of symptoms related to his asthma. *See, e.g.,* ECF No. 161-1, pp. 40-41 (observed jogging) and pp. 52-53 (Simmons failed to report any asthma symptoms).

*Jordan v. Murin*, 2020 WL 8675897, at *5 (W.D. Pa. Nov. 4, 2020), *report and recommendation adopted*, 2021 WL 612823 (W.D. Pa. Feb. 17, 2021).

As to the second requirement, an official's denial of an inmate's reasonable requests for medical treatment constitutes deliberate indifference if such denial subjects the inmate to undue suffering or a threat of tangible residual injury. *Id.* at 346. Deliberate indifference may also be present if necessary medical treatment is delayed for non-medical reasons, or if an official bars access to a physician capable of evaluating a prisoner's need for medical treatment. *Id.* at 347. However, an official's conduct does not constitute deliberate indifference unless it is accompanied by the requisite mental state. Specifically, "the official [must] know ... of and disregard ... an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). While a plaintiff must allege that the official was subjectively aware of the requisite risk, he may demonstrate that the official had knowledge of the risk through circumstantial evidence and "a fact finder may conclude that a[n] ... official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842. Deliberate indifference has been found, for example, where a prison official "knows of a prisoner's need for medical treatment but intentionally refuses to provide it[,]" or "prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Durmer v. O'Carroll,* 991 F.2d 64, 68 (3d Cir. 1993)). *See also, Monmouth Cty. Corr. Institutional Inmates*, 834 F.2d at 346-47).

The law is clear, however, that mere medical malpractice is insufficient to present a constitutional violation. *See Estelle*, 429 U.S. at 106; *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir.1993). Prison authorities are afforded wide latitude and discretion in the treatment of

prisoners. *See Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.1979); *see also White*, 897 F.2d at 110 ("[C]ertainly no claim is stated when a doctor disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness."). Mere errors in medical judgment or other negligent behavior do not meet the *mens rea* requirement. *See Estelle*, 429 U.S. at 107; *Rouse*, 182 F.3d at 197. The proper forum for a medical malpractice claim is in state court under the applicable tort law. *See id.*

Furthermore, "mere disagreement as to the proper medical treatment" does not "support a claim of an eighth amendment violation." *Lanzaro*, 834 F.2d at 346. Accordingly, when medical care was provided, the Court presumes that the treatment of a prisoner was proper absent evidence that it violated professional standards of care. *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.").

At its core, Simmons' Eighth Amendment claim is that he should have been provided with a readily available asthma inhaler after he was sprayed with OC spray. *See, e.g.*, ECF No. 180, ¶¶ 17, 29. Pointing to the extensive medical record, the Medical Defendants argue that Simmons received extensive treatment for his asthma, as well as other conditions, and did, in fact, receive an asthma inhaler when the need for such a prescription was warranted. Defendants thus contend that Simmons' complaints constitute mere disagreements over the treatment he received and do not support an Eighth Amendment violation. *See* ECC No. 161, *generally*. The Court agrees.

Having reviewed the extensive medical records, logs, and documents presented by both the Medical Defendants and Simmons, (*see generally* ECF No. 161-1; ECF No. 178-1 through

178-21), the Court finds that the medical care provided to Simmons was not violative of the Eighth Amendment. Instead, the medical records demonstrate a consistent course of treatment for Simmons' asthma. For example, Simmons was seen just a day after his last exposure to OC spray. On September 27, 2018, Medical Defendant Leslie saw Simmons for what Simmons described as a "jolt-like" chest pain he was experiencing since being sprayed with OC spray the previous evening. ECF No. 161-1, p. 54. Leslie noted that Simmons was not in any "acute distress," that no medications were needed, and that Simmons should follow up as needed. *Id.* Leslie saw Simmons again on October 9, 2018 for Simmons' report of "partial and full blown seizures," which Simmons claimed began after the OC spray incident on September 26, 2018. *Id.*, p. 52-53. Although Simmons complained of shaking in his right leg and left arm, he made no asthma-related or generalized breathing complaints to Leslie at this time. *Id.* Because Simmons was already taking a medication to manage chronic pain and convulsions, Leslie declined to prescribe any additional medication at that time. *Id.* On December 19, 2018, Simmons was seen by Medical Defendant Sutherland. *Id.*, pp. 40-41. Simmons complained of shortness of breath and wheezing stemming from the OC spray incident several weeks earlier. *Id.* Simmons did request an inhaler which Sutherland noted Simmons had not used in over a year. *Id.* But in any event, Sutherland prescribed Xopenex, a fast-acting asthma inhaler, for Simmons' use.[5] *Id.*

The medical record also relates the prescription for Xopenex was discontinued in January of 2019, because Simmons "indicated he does not use the inhaler" and that Simmons "was noted to be jogging in his cell when he initially requested a refill of his inhaler." *Id.*, p. 33. Simmons was told to contact the prison medical department if he experienced any further breathing

[5] As other Courts have noted, a Xopenex HF (Levalbuteral) inhaler is typically used as needed for shortness of breath. *See, e.g., Snider v. Pa. Dep't Corrs.*, 2019 WL 4793056, at *10 (M.D. Pa. Sept. 30, 2019).

difficulties. *Id.* Simmons was then seen on April 13, 2019, for an asthma attack. *Id.*, pp. 140-45. He was given a dose of Xopenex and Defendant Maxa prescribed him an inhaler the next day. *Id.*, p. 162. Defendant Leslie then followed-up with Simmons on April 14, 2019. *Id.* at pp. 138-39. Simmons was not in any distress, was able to speak with Leslie, and was permitted to keep his inhaler in his cell. *Id.*, at pp. 135-36. Defendant Sutherland attempted to see Simmons on April 19, 2019, but Simmons refused to come to his cell door. *Id.* Simmons was seen by Sutherland on April 24, 2019, who noted that Simmons was breathing easily. *Id.* On April 26, 2019, Simmons was again seen by Sutherland on account of reported breathing difficulties. *Id.*, pp. 131-32. Simmons' respiration and heart rates were normal, his lungs clear, and Sutherland noted Simmons was not in any apparent distress. *Id.*

Simmons' disagreement with the Medical Defendants over the provision of his inhaler appears to have begun in July of 2019, months prior to the utilization of OC in his cell. On July 17, 2019, Leslie explained to Simmons that he would not be refilling his inhaler prescription due to noncompliance: Simmons had only used one inhaler in the past year and Leslie no longer felt it was necessary. *Id.*, pp. 171-72. Nonetheless, Defendant Sutherland renewed Simmons' inhaler prescription on August 12, 2019, but required that it be kept in possession of prison staff and given to Simmons when requested so that the medical department could track how often Simmons used it. *Id*, p. 460. The prescription was renewed on September 19, 2019, and on November 25, 2019. *Id.*, pp. 456-57. Simmons was transferred to another institution in December of 2019.

While Simmons may disagree with the course of his treatment, as well as the efforts of the Medical Defendants, such disagreements do not constitute a constitutional violation actionable under 42 U.S.C. § 1983. *See Durmer*, 991 F.2d at 67.

B. Defendant Lamoreaux is entitled to summary judgment on Simmons' Eighth Amendment deliberate indifference claim.

Simmons argues that Defendant Lamoreaux violated his Eighth Amendment rights by ignoring his requests for treatment. See ECF No. 68, ¶¶ 33-39. In moving for summary judgment, Lamoreaux argues that the record does not support a finding that she was personally involved in any alleged violation of Simmons' rights. The Court agrees.

Lamoreaux points outs—and Simmons does not contest—that she is not a clinician, does not see patients, and only provides administrative services to Wellpath, LLC. ECF No. 161, p. 17. These duties include the scheduling of clinicians and acting as a liaison between the medical provider and the DOC. *Id.* She is a "nonmedical defendant." *See, e.g., Seldon v. Wetzel*, 2020 WL 929950, at *4 n.3 (W.D. Pa. Feb. 6, 2020) *report and recommendation adopted*, 2020 WL 924046 (W.D. Pa. Feb. 26, 2020). As a healthcare administrator, Lamoreaux is not responsible for responding to an inmate's medical needs and complaints while that inmate is under the care of medical professionals, and her failure to do so is not actionable under the Eighth Amendment. *See Seldon*, 2020 WL 929950, at *4 n.3 (holding that because Lamoreaux was a Health Services Administrator and does not provide clinical care ... [she] is not deliberately indifferent if she failed to respond to plaintiff's medical complaints while he was under the care of medical processionals) (citations omitted). Simmons cannot maintain an Eighth Amendment deliberate indifference claim against an administrator such as Lamoreaux in the absence of evidence suggesting she had "knowledge of 'malicious' and 'sadistic' medical mistreatment." *Henderson v. Bussanich*, 2006 WL 3761998, at *1 (M.D. Pa June 20, 2006). *See also, e.g., Pearson v. Prison Health Serv.*, 850 F.3d 526, 543 (3d Cir. 2017) (non-medical staff was not deliberately indifferent "for failing to second-guess the medical staff's appraisal of the situation"); *In re Wetzel*, 2016 WL 4945315, at *3 (W.D. Pa. Sep. 16, 2016) (rejecting a claim of

deliberate indifference against a non-medical defendant because the plaintiff acknowledged that he had received treatment from prison physicians). Because the record includes no evidence to support such a finding, summary judgment will be entered in favor of Lamoreaux on Simmons' deliberate indifference claim.

## IV. Conclusion

For the foregoing reasons, the Medical Defendants' Motion for Summary Judgment will be granted. A separate order follows.

Submitted this 20th day of December, 2021.

BY THE COURT:

RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE