IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| REV. AUGUSTUS SIMMONS ENOCH, | ) |
| | ) |
| Plaintiff | ) 1:19-CV-00026-RAL |
| | ) |
| vs. | ) |
| | ) RICHARD A. LANZILLO |
| DAVID PERRY, J. SAWTELLER, et al, | ) UNITED STATES MAGISTRATE JUDGE |
| | ) |
| | ) MEMORANDUM OPINION ON |
| Defendants | ) DEFENDANTS' MOTION FOR SUMMARY |
| | ) JUDGMENT |
| | ) |
| | ) ECF NO. 155 |
| | ) |

Presently before the Court is a motion for summary judgment filed on behalf of fourteen individual Defendants employed by the Pennsylvania Department of Corrections ("DOC Defendants"). *See* ECF No. 155. For the reasons explained below, the motion will be GRANTED.

I.  Relevant Procedural History

Plaintiff Augustus Simmons Enoch ("Simmons")[1], representing himself, commenced this civil rights action against the fourteen DOC Defendants and four other individuals ("Medical Defendants") who provided medical services at the DOC's State Correctional Institution at

---

[1] Simmons identified himself in his initial Complaint as "Reverend Augustus Simmons Enoch" and in his Amended Complaint as "Rev. Magi Augustus Enoch" and "Rev. Magi Augustus Osiris Enoch." *See* ECF No. 5, p. 1; ECF 68, pp. 1, 7. Although the docket lists him as "Augustus Simmons Enoch," the Court will refer to him as "Augustus Simmons" or "Simmons" consistent with the name listed in DOC records. The DOC's inmate locator service does not yield results for anyone named "Reverend Augustus Simmons Enoch" or "Magi Augustus Enoch" or "Rev. Magi Augustus Osiris Enoch." *See* http://inmatelocator.cor.pa.gov (last consulted on May 29, 2020). The Defendants also refer to him as "Simmons."

1

Forest ("SCI-Forest"). All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case. *See* ECF Nos. 23, 24, 31, and 40.

Simmons' Amended Complaint is his operative complaint. *See* ECF No. 68. The DOC Defendants previously moved to dismiss certain of Simmons' claims pursuant to Fed R. Civ. P. 12(b)(6). By Memorandum Opinion and Order dated July 20, 2020, the Court granted in part and denied in part the DOC Defendants' motion. *See* ECF No. 101. The Court dismissed all of Simmons' claims against the DOC Defendants except: (1) an Eighth Amendment excessive force claim relating to the use of oleoresin capsicum ("OC") spray[2] against Simmons on September 26, 2019; (2) an Eighth Amendment deliberate indifference claim relating to the use of OC spray on September 25, 2019 and September 26, 2019; and (3) a First Amendment free exercise of religion claim and a claim under the Religious Land Use and Institutionalized Person Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a). *See* ECF No. 101, p. 21.

After the completion of discovery, the DOC Defendants and the Medical Defendants moved separately for summary judgment. *See* ECF Nos. 155, 160. By order dated December 20, 2021, the Court granted the Medical Defendants' motion and entered judgment in their favor. *See* ECF Nos. 184, 185. In support of their motion, the DOC Defendants argue that they are entitled to judgment as a matter of law because the record confirms that Simmons did not exhaust his administrative remedies as to any of his three remaining claims. See ECF No. 156. The motion has been fully briefed and is ripe for disposition. *See* ECF No. 156, 166, 167.

Because the DOC Defendants seek summary judgment based on the affirmative defense of failure to exhaust administrative remedies, the Court will first summarize Simmons' factual

---

[2] The terms "pepper spray," "O.C. spray," and "mace" are used interchangeably in this Court's jurisprudence. *See, e.g., Benson v. Wetzel*, 2019 WL 2393799, *5 (W.D. Pa. June 6, 2019) (citing *Banks v. Mozingo*, 423 Fed. Appx. 123, 126-27 (3d Cir. 2011)).

allegations and legal claims. The Court will then review the administrative record to determine whether Simmons exhausted his administrative remedies as to each claim.

II. Factual Allegations and Claims Asserted in the Amended Complaint

Simmons alleges the following facts against the DOC Defendants. On September 25, 2018, while Simmons was incarcerated at SCI-Forest, DOC personnel twice sprayed him with OC spray despite his protestations that he suffered from asthma. *See* ECF No. 68, ¶ 22. Simmons alleges that following this incident, DOC Defendants Perry, Lee, Sawteller, Hill, Bell, Smith, Prinkey, and Kellerman failed to provide him with his asthma inhaler in deliberate indifference to his medical needs. Simmons also alleges that the next day, while unconscious in his cell, he was again sprayed with OC spray. Here again, he claims the DOC Defendants were deliberately indifferent to his asthma before, during, and after this second use of OC spray. *Id.*, ¶ 25-28. Simmons claims that DOC personnel confiscated his inhaler at that time and that—despite his asking for it—DOC personnel failed to return it to him. *Id.* The discharge of OC spray, he contends, resulted in asthma attacks and ongoing breathing problems. *Id.*, ¶ 31-36.

Simmons' final remaining claim asserts that limitations on his religious exercise have violated his constitutional and statutory rights. Simmons is the founder of a religious he has designated as the Fellowship of Spiritual Science. This claim arises out of requests he has made for accommodation of certain practices he has adopted as part of this religion.

III. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "[A] pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Martin v. Wetzel*, 2021 WL 2926005, at *3 (W.D. Pa. July 12, 2021) (quoting *Damson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (other citation omitted)). Put another way, just because a non-moving party is proceeding pro se, he is not relieved of their "obligation under

4

Rule 56(c) to produce evidence that raises a genuine issue of material fact." *Id.* (quoting *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000)); *see also Winfield v. Mazurkiewicz*, 2012 WL 4343176, *1 (W.D. Pa. Sept. 21, 2012).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). With these standards in mind, the Court now turns to a discussion and analysis of the DOC Defendants' motion.

III.   Discussion and Analysis

   A.   Exhaustion of Administrative Remedies

The DOC Defendants argue that they are entitled to judgment as a matter of law because Simmons has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e)a. The PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 578 U.S. 632, 637-38 (2016); *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Block*, 5439 U.S. 199, 218

(2007) (citation omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Completion of the administrative review process means "substantial" compliance with the prison's grievance procedures. *See Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004) (citing *Nyhuis*, 204 F.3d at 77-78). Put another way, the PLRA's exhaustion requirement includes a procedural default component, by which inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court. *See Williams v. Wetzel et al.*, 2021 WL 5298872, at *5 (M.D. Pa. Nov. 15, 2021) (citing *Spruill*, 372 F.3d at 230-32; and *Oriakhi v. United States*, 165 Fed. Appx. 991, 993 (3d Cir. 2006). Inmates who fail to complete the prison grievance process in a full and timely manner have not properly exhausted their claims and are barred from subsequently litigating those claims in federal court. *See, e.g., Bolla v. Strickland*, 304 Fed. Appx. 22 (3d Cir. 2008); *McCain v. Smith*, 2021 WL 5205870, at *2 (M.D. Pa. Nov. 8, 2021).

The DOC's Inmate Grievance Policy, DC-ADM 804, applies to most inmate concerns regarding their conditions of confinement, including Simmons' excessive force and deliberate indifference claims.[3] The DC-ADM 804 grievance process consists of three steps or stages. First, within fifteen days of the incident, the prisoner must submit a written grievance for review by the facility manager or the regional grievance coordinator, who, in turn, must respond in writing within fifteen business days. Second, if the grievance is denied, the inmate must submit

---

[3] Three administrative remedy processes provide inmates in the custody of the Pennsylvania DOC with an avenue to challenge aspects of their confinement. *See McClain v. Alveriaz*, 2009 WL 3467836, at *6 (E.D. Pa. Oct. 26, 2009) (citations omitted). Those policies are: (1) the Inmate Discipline Policy, DC-ADM 801; (2) the Administrative Custody policy, DC-ADM 802; and (3) the Inmate Grievance Policy, DC-ADM 804. *Id.* Which of these policies applies in a given instance depends on the subject matter of the inmate's grievance and his or her custody classification. DC-ADM 801 deals with inmate misconducts. DC-ADM 802 is similar but applies only to inmates who are in administrative custody. Finally, DC-ADM 804 provides the relevant grievance procedures for all inmate grievances not connected with a misconduct citation. *Id.* DC-ADM 804, as currently written has been effective since February 16, 2016, and is the relevant policy here. *See, e.g., Mccain v. Smith, et al.*, 2021 WL 5205870, at *3 (M.D. Pa. Nov. 8, 2021).

a written appeal to intermediate review within fifteen working days, and again the inmate is to receive a written response within fifteen working days. Finally, if the inmate remains dissatisfied following this second level outcome, he must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen working days, and then the inmate will receive a final determination in writing within thirty days. *See Booth v. Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 1997), *aff'd*, 532 U.S. 731 (2001).

To establish a plaintiff's failure to exhaust administrative remedies at the summary judgment stage, the moving party must produce a record demonstrating his entitlement to judgment on the defense as a matter of law. Fed. R. Civ. P. 56(c)(1)(A). *See also Brown v. Smith*, 2021 WL 4429847, at *5 (W.D. Pa. Sept. 27, 2021). Typically, the most efficacious means to do so is for a defendant to produce the plaintiff's entire grievance record. *See, e.g., Green v. Maxa*, 2019 WL 1207535, at *6 (W.D. Pa. Mar. 14, 2019); *Jackson v. Superintendent Greene SCI*, 671 Fed. Appx. 23, 24 (3d Cir. 2016). Where the plaintiff has missed a step in the grievance process, however, the defendant should provide an affidavit from a person with knowledge or a properly authenticated business record affirming factually that the plaintiff failed to properly exhaust. *See* Fed. R. Civ. P. 56(c)(4). This is often an affidavit from a records custodian. *See Wiggins v. Correct Care Solutions, LLC*, 2017 WL 11550519, at *5, *7-8 (E.D. Pa. May 9, 2017); *Muhammad v. Sec'y Pa. Dep't of Corrs.*, 621 Fed. Appx. 725, 727 (3d Cir. 2015) (affidavit attesting plaintiff failed to appeal to SOIGA); *accord Martin v. Pa. Dep't of Corrs.*, 395 Fed. Appx. 885, 886 (3d Cir. 2010) (affidavit stating plaintiff "never sought final review").

When asked during discovery to identify grievances that may be relevant to the claims in this lawsuit, Simmons identified eight: Grievance Nos. 777430, 781423, 814837, 798122,

7

786355, 786178, 783640, and 787265. *See* ECF No. 157, ¶ 19; ECF No. 166, ¶ 19. In support of their exhaustion defense, the DOC Defendants produced the administrative record concerning each of these grievances. *See* ECF No. 158. They also produced a declaration from Keri Moore, SOIGA's Assistant Chief Grievance Officer, verifying the accuracy of the administrative record. ECF No. 158-13. In his Responsive Concise Statement, Simmons acknowledges that only Grievance Nos. 777430, 789122, and 814837 are relevant to the remaining claims. ECF No. 166, ¶¶ 26-54. Upon further review, the Court has determined that only Grievance number 777430 is relevant to the Eighth Amendment claims remaining against the DOC Defendants. There, Simmons indicates that "I was passed out in my cell and that's why I was OC sprayed." ECF No. 167-6, p. 2. The other two grievances concern treatment provided by Medical Defendants Sutherland (No. 798122) and Leslie (No. 814837). The claims against those two individuals are addressed in the Court's Opinion and Order granting the Medical Defendants' motion for summary judgment. *See* ECF No. 101

As to Grievance No. 777430, the DOC Defendants argue that Simmons did not properly exhaust that grievance. Specifically, they contend that this grievance was correctly dismissed due to his failure to comply with multiple procedural requirements, including his failure to timely appeal to SOIGA and his failure to submit required documentation.

B.  Grievance No. 777430 was not properly exhausted.

As noted, Grievance No. 777430 is Simmons' only grievance concerning his Eighth Amendment excessive force and deliberate indifference claims against the DOC Defendants. Although neither party has submitted a copy of the initial grievance form, the Initial Review Response to it states Simmons filed it on December 20, 2018. *See* ECF No. 167-6, p. 2. DOC Defendant Prinkey responded to Grievance No. 777430 on December 27, 2018, noting that

Simmons was grieving the use of OC spray on September 25, 2018.[4] *Id.* According to Prinkey, Simmons stated in his grievance, "I was passed out in my cell and that's why I was OC sprayed." *Id.* Further, Simmons grieved that he "should never have been sprayed with OC spray per DOC policy's medical contraindications in the use of Oleoresin capsicum." *Id.*

The DOC Defendants do not dispute that the substance of Simmons' grievance raised the excessive force and deliberate indifference claims asserted against them in this action. Instead, the contend that Simmons did not file a timely final appeal to SOIGA. As noted, Simmons received his Initial Review Response on December 27, 2018.[5] *Id.* He then filed his appeal to the Facility Manager on January 7, 2019, which was well within the fifteen-day time period allowed by DC-ADM 804. *Id.* at p. 4. The Facility Manager responded to that appeal on February 1, 2019. *Id.*, p. 5. Simmons had fifteen working days from that date or until February 22, 2019 to file his appeal to final review by SOIGA. The DOC Defendants point out that Simmons' final appeal was not post-marked until April 2, 2019 and not received by the SOIGA office until April 8, 2021. ECF No. 185-5, p. 2. Ms. Moore confirms these facts in her declaration. ECF No. 158-13, ¶¶ 20-21. Thus, the exhaustion requirement for this grievance was not satisfied because Simmons' appeal to SOIGA from the Facility Manager's response was more than forty-days late.

---

[4] Neither party explained why this Grievance was filed well-beyond fifteen working days from September 25, 2018, or why it was not rejected as late by the Grievance Officer. Further, while Simmons grieved that he was sprayed with OC spray while unconscious, which the is the basis for his remaining claim, the Initial Review Response to Simmons' grievance specifies the date of the incident as September 25, 2018—not September 26, 2018—as alleged in Simmons' Amended Complaint. ECF No. 68, ¶ 25.

[5] Monday, February 18, 2019, was President's Day, a state holiday. *See Garner v. Southeastern Pennsylvania Transp. Auth.*, 2015 WL 5453095, at *3 (Pa. Cmwlth. Ct. June 2, 2015) (recognizing that "President's Day, which is a federal holiday and also a state holiday under Section 1 of the Act of May 31, 1893, P.L. 188, 44 P.S. § 11 (holidays designated)). Thus that day was counted as a "working day." *See, e.g., Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 306 n.4 (3d Cir. 2020) (holding "per DC-ADM 804 policy ... working days are equivalent to business days and exclude state holidays").

9

Simmons offers no explanation for this delay. Instead, he argues that the DOC's grievance procedures were unavailable to him because "administrative staff ... failed to timely serve their Grievance response from the facility manager," and "the grievance coordinator did not deliver the [Facility Manager's] grievance response in a timely manner." ECF No. 166, ¶ 21. According to Simmons, this "forc[ed] plaintiff to appeal grievance #777430 on 2, 27, 2019." ECF No. 167, ¶ 27. Simmons is correct that the Facility Manager's response was late.[6] As noted above, the DOC grievance policy provides that the Facility Manager shall respond to the inmate within fifteen days and this deadline was not met here. But "the untimeliness of the ... response does not excuse [the inmate's] failure to appeal that response." *Cash v. Dohman,* 2018 WL 1531681, at *5 (E.D. Pa. Mar. 29, 2018). Although the Court of Appeals for the Third Circuit has held that "a litigant who had received no response to his grievance could not be faulted, in the context of administrative exhaustion, for failing to file an appeal," here Simmons ultimately received a response, *albeit* an untimely one, and no evidence in the summary judgment record supports a finding that the untimeliness of the Facility Manager's response prevented him from timely appealing that response. *Basemore v. Vihlidal,* 605 Fed. Appx. 105, 109, n.6 (3d Cir. 2015) (citing *Small v. Camden Cty.,* 728 F.3d 265 (3d Cir. 2013)). *See also Lawson v. Ferdarko,* 2017 WL 36915, at *5 (W.D. Pa. Jan. 4, 2017) (holding that despite an untimely response from the prison, the plaintiff "had every opportunity to proceed with his administrative remedies when

---

[6] Simmons contradicted himself when identifying the date he received the Facility Manager's response. In his brief in opposition to the motion for summary judgment, he stated that "the record reflects that the grievance appeal to the facility manager was filed on 1-17-19 but the Plaintiff but he did not receive the responce (sic) until 2-1-19." ECF No. 167, ¶ 47. However, on the form appealing the Facility Manager's response to SOIGA, Simmons stated that he did not receive the Facility Manager's response until "2-17-19." ECF No. 167-6, p. 6. Regardless, his appeal to SOIGA was not post-marked until April 2, 2019 and not received by SOIGA until April 8, 2019. *See* ECF No. 167-6, p. 4. Thus it was untimely using either date.

he received [the] denial of his grievance"). That the Facility Manager's response was late did not excuse Simmons from appealing that decision to SOIGA in a timely manner.

Simmons has produced a DC-138A form, also known as a "cash slip," dated March 8, 2019, as part of the summary judgment record. *See* ECF No. 167-19, p. 2. On the form, Simmons asked prison personnel to "please deduct indegent (sic) legal mail postage" to mail "grievances inclosed (sic)" to SOIGA. *Id.* Grievance No. 777430 was among those listed.[7] *Id.* But that document does not support a timely appeal to SOIGA, the unavailability of administrative remedies, or otherwise serve to excuse Simmons' failure to submit a timely appeal to SOIGA. As noted, the cash slip is dated March 8, 2019. By that date, Simmons' appeal to SOIGA was already late.

Further, any argument that Simmons' appeal of his misconduct charge satisfies his obligation to exhaust his administrative remedies as to his excessive force and deliberate indifference claims is without merit.[8] The Court of Appeals for the Third Circuit has held that an inmate cannot properly exhaust an Eighth Amendment failure to protect claim through the DC-ADM 801 misconduct appeal process. *See Howard v. Chatcavage*, 570 Fed. Appx. 117 (3d Cir. 2014); *see also Robinson v. Southers*, 2021 WL 2270677, at *6 (M.D. Pa. June 3, 2021) (citing *Howard*). In *Howard*, the Court rejected the inmate's argument that the appeal of his misconduct also exhausted his Eighth Amendment claim:

---

[7] Simmons listed Grievance Nos. 778268, 775357, 778950, 780760, 781406, 781423, 782575, 774393, 777343, 777349, and 777781 as those to be mailed to SOIGA. ECF No. 167-19, p. 2.

[8] It is not clear that Simmons has asserted such an argument. In connection to Grievance No. 777430, Simmons disjunctively states in his responsive brief that "Misconduct DO44627 without any procedural disruption." ECF No. 167, ¶ 27. From this, Simmons may only be pointing out that he was able to appeal his misconduct charge without procedural issue, but not his Grievance appeal. However, out of an abundance of caution, and given that Simmons is representing himself, the Court will construe this as an argument that he exhausted his claim relating to the use of OC spray by appealing his misconduct charge.

> The purpose of the exhaustion requirement is to ensure that prison officials have a fair opportunity to correct their own errors before the initiation of a federal case. Howard did not give the defendants such an opportunity here. There is nothing in the record to indicate that Howard's appeal of the misconduct for fighting alerted prison officials to this independent, affirmative Eighth Amendment claim against them, much less afforded them the opportunity to evaluate or remedy that claim before the initiation of this case. Indeed, the inmate grievance process and the inmate discipline process are two separate tracks, the mixing of which is specifically forbidden: "A grievance directly related to a specific inmate misconduct charge ... will not be addressed through the Inmate Grievance System and must be addressed through Department policy DC-ADM 801, 'Inmate Discipline.'"

*Howard*, 570 Fed. Appx. at 118–19 (citations omitted). The Court of Appeals' reasoning applies with equal force in this case. Simmons' appeal of his misconduct charge for disobeying orders did not serve as a vehicle to exhaust his Eighth Amendment excessive force claim.[9]

Because Simmons did not properly exhaust Grievance No. 777430, he is procedurally barred from suing the DOC Defendants for the alleged violation of rights asserted in that grievance. *See, e.g., Brown v. Wetzel*, 2020 WL 1249081, at *5 (W.D. Pa. Mar. 16, 2020).

---

[9] Recently, the Court of Appeals for the Third Circuit recognized that "serious question" exists "whether ... DC-ADM-801 and DC-ADM-804 are available to prisoners as a method to grieve *retaliation claims*." *See Grisby v. McBeth*, 810 Fed. Appx. 136, 138 n.1 (3d Cir. 2020) (emphasis added).. At issue in *Grisby* was the inmate-plaintiff's claim that he received a misconduct in retaliation for threatening to report an officer for "rudely den[ying] him a vegetarian meal." *See id.* at 137. The Court of Appeals noted "uncertainty regarding the interpretation of DC-ADM-801 and DC-ADM 804 and their interaction, if any, when it comes to retaliation claims." *Id.* at 138 n.1. *See also Cooper v. Garman*, 2021 WL 4033113, at *6 (M.D. Pa. Sept. 3, 2021). Here, however, Simmons has alleged no retaliatory animus in his appeal of his misconduct charge. His appeal stated only that he was unable to comply with a direct order because he was unconscious "and needed medical attention and not excessive force via o.c. spray." ECF No. 167-4, p. 2. Thus, Simmons' appeal of his misconduct charge merely offered a defense to the underlying charge of a failure to obey orders. It did not put the DOC on notice of an Eighth Amendment constitutional challenge or give them the first opportunity to rectify such an issue. *See, e.g., Walker v. Regan*, 2018 WL 347685, at *4 (E.D. Pa. Jan. 9, 2018). In addition, Simmons's appeal of his misconduct charge did not ask for compensatory or other damages. This is a requirement under DC-ADM 804, and the failure to request such damages would preclude their recovery in this action. *See Tillery v. Wetzel*, 2019 WL 480485, at *6 (W.D. Pa. Feb. 7, 2019) (citing *Wright v. Sauers*, 729 Fed. Appx. 225, 227 (3d Cir. 2018) ("DC-ADM 804 now requires an inmate to specify whether he seeks 'compensation or other legal relief normally available from a court in his initial grievance.'")).

Consequently, the DOC Defendants are entitled to judgement as a matter of law on Simmons' remaining Eighth Amendment excessive force and deliberate indifference claims.

C. The Religion Claims

Simmons claims that the DOC Defendants violated his rights to the free exercise of his religion under the First Amendment and as guaranteed by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*. The Court previously declined to dismiss these claims on the DOC Defendants' motion pursuant to Fed. R. Civ. P 12(b)(6), opting instead to allow the parties to engage in discovery and develop the relevant factual record. *See* ECF No. 101, pp. 19-20. The DOC Defendants now argue that Simmons has failed to exhaust his administrative remedies concerning these claims. Two DOC policies and procedures—DC-ADM 804 and DC-ADM 819—are potentially relevant to determining whether Simmons exhausted his administrative remedies concerning these claims.

Apropos DC-ADM 804, the only grievance identified in the record relating to Simmons' religion claims is Grievance No. 783640. *See* ECF No. 158-7, pp. 1-10. In that grievance, Simmons complained that on "1-27-2019 I was unable to complete my religious book for the Fellowship of Spiritual Science called Magnus Manifesto." *Id.*, p. 1. For his part, Simmons has acknowledged that this grievance is "not relevant too (sic) this complaint." ECF No. 166, ¶ 32. Given this admission and the grievance's omission of any reference to the denials of religious accommodations described in this lawsuit, Grievance No. 783640 would not have exhausted Simmons' religion claim. In addition, Simmons did not submit a timely appeal to SOIGA from the intermediate denial of this grievance. Simmons submitted this grievance on January 27, 2019. ECF No. 158-7, p. 2. He received an Initial Review Response on February 25, 2019. *Id.*, p. 4. Simmons then submitted an appeal to the Facility Manager on March 4, 2019, and the

Facility Manager responded on March 28, 2019. *Id.*, pp. 5-6. Simmons had until April 18, 2019—fifteen working days from March 28, 2019—to appeal to SOIGA. Although his appeal to SOIGA is dated April 4, 2019, it was not postmarked until May 2, 2019, and not received by that office until May 8, 2019. *Id.*, p. 2. *See also* ECF No. 158-13, ¶¶ 34-35 (Moore Declaration). Simmons offers no explanation for this delay. As noted, no other DC-ADM 804 grievance concerns the religion claims raised in this action. Therefore, if DC-ADM 804 applies to Simmons' First Amendment free exercise and RLUIPA claims, he failed to exhaust his administrative remedies as to those claims and the DOC Defendants are entitled to summary judgment based on this failure.

Simmons argues, however, that his utilization of the "Religious Accommodation Request" and appeal process outlined in DC-ADM 819 "satisf[ies] the PLRA exhaustion requirements." ECF No. 167, p. 7, ¶ 20. He argues that "DC-ADM 819 requires all religious accommodation claims to be raised through the religious accommodation process; this remedy replaces the necessity of the grievance system and exhaust any and all religious claims made through this administrative process." *Id.*, ¶ 21. Whether DC-ADM 819 supersedes DC-804 where the subject is a requested religious accommodation appears to be an issue of first impression in the Third Circuit.

According to DC-ADM 819, when an inmate requests a "non-grooming" religious accommodation, he or she must complete and submit a "Religious Accommodation Request Form—Non-grooming Form." ECF No. 167-2, p. 63 (DC-ADM 819, Section 4(C)). Then, the Facility Chaplaincy Program Director ("FCPD") must schedule an interview with the inmate regarding the request within twenty working days thereafter. *Id. See also Hall v. Klemm*, 2017 WL 913954, at *2 (W.D. Pa. Feb. 1, 2017), *report and recommendation adopted*, 2017 WL

14

913803 (W.D. Pa. Mar. 7, 2017). After interviewing the inmate, the FCPD makes a recommendation as to whether to grant the request and circulates that recommendation to representatives of various departments within the facility—including the Major of the Guard, Corrections Care Program Manager, and Facility Manager—for their approval. *Id.* After the FCPD's recommendation is circulated among facility staff, it is forwarded to the Central Office for a final determination by the Religious Accommodation Review Committee ("RARC"). *Id.* Following the RARC meeting, the Bureau of Treatment Services ("BTS") prepares a formal suggested response to the inmate's request for the religious accommodation, which is subject to the approval of the Regional Deputy Secretary. *Id.* The final decision is sent to the FCPD, who then provides the inmate a copy of the final decision letter. *Id.*

Simmons filed a religious accommodation request on April 12, 2018. ECF No. 167-3, p. 2. He asked that his religion "be recognized on the religious change form and within the Department of Corrections; that he be provided with a specific diet;" that his twice-daily meditative prayer be "conducted with ritualistic food items via snack bag;" that he receive "seven food items while in the prayer of union;" that he be permitted to celebrate several feast days accompanied by special foods; that he be permitted access to a science journal; and that he be provided a "substitute for his spiritual mat, and a official and active address for a ankh pendant." *Id.* pp. 3-17.

His initial request for these accommodations was received by the FCPD on April 18, 2018. *Id.*, p. 2. Simmons did not provide the entire record of this accommodation request, but he did submit the final decision letter issued by Deputy Secretary Trevor Wingard on August 23, 2018. *Id.*, p. 19. That document shows that the BTS staff informed the institution of the final decision on August 28, 2018, and the FCPD sent Simmons a copy of the decision on that same

day.[10] *Id.* Simmons argues that he did all he needed to do to exhaust the claims surrounding the denial of his religious accommodations though his utilization of the DC-ADM 819 process.

The question is whether Simmons was also required to commence and exhaust the DC-ADM-804 grievance process after he completed the extensive administrative procedures specified by DC-ADM 819 for requesting religious accommodations. The regulatory evolution of DC-ADM 819 arguably speaks to this issue. The version of DC-ADM 819 adopted by the DOC in 2006 included a provision specifying that "[g]rievances may only be submitted after the inmate has received notification of the decision on the requested accommodation." *See* DC-ADM 819-03 § VI.G.2.g (effective Mar. 3, 2006); *Scott v. Erdogan*, 2016 WL 4154939, at *6 (M.D. Pa. Aug. 4, 2016). This provision was omitted, however, from the version of DC-ADM 804 adopted by the DOC in 2016, which was in effect when Simmons pursued his religious accommodations. The DOC's removal of this provision can be interpreted both as support for and as undermining Simmons' position. It can be read to mean that inmates need no longer resort to the DC-ADM 804 grievance process where the DC-ADM 819 process applies. Indeed, it seems incongruous that an inmate seeking a religious accommodation would have to satisfy both the DC-ADM 819 process and the DC-ADM 804 process. Requiring exhaustion of both processes would mean that an inmate dissatisfied with the ultimate decision of the Deputy Secretary of the DOC regarding his or her request for religious accommodation would then have to grieve that decision through a process that begins with the prison's grievance officer. In other words, this interpretation would have lower-level prison officials reviewing a decision of the

---

[10] The majority of Simmons' requested accommodation were denied. ECF No. 167-3, pp. 18-19. However, he was told that he may purchase a prayer mat and ankh pendant when "the security phase he is in allows for such a purchase" and that he may "write the name of his religion next to the category OTHER on the Religious Preference Form." *Id.*, p. 19.

Deputy Secretary—a decision informed by an elaborate evaluation process and recommendations from officials with specialized knowledge regarding the subject matter at hand. Indeed, under DC-ADM 804, the Facility Manger, who participated in the DC-ADM 819 process, would be one of the officials responsible for reviewing the decision produced by that process.

On the other hand, the omission of the provision can reasonably be read to mean that the DC-ADM 804 process still applies to inmate concerns regarding religious accommodations, but inmates need no longer wait until the DC-ADM 819 process has been completed before submitting a grievance. While it may seem odd that the DOC would allow inmates to use the grievance process to preempt or forego DC-ADM 819's elaborate multi-step process for addressing requests for religious accommodations, this appears to be the effect of the removal of DC-ADM 819-03 § VI.G.2.g. Moreover, by its own terms, DC-ADM 804 applies broadly to most matters of concern to inmates.[11] *See* DC-ADM 804 §1 (A)(2) ("The Inmate Grievance System is intended to deal with a wide range of issues, procedures, or events that may be of concern to an inmate."). And nothing in the DOC's current policies states that the DC-ADM 804 process is not to be used during or following the DC-ADM 819 process. Indeed, where the DOC has intended to except certain complaints or concerns raised by inmates from the DC-ADM 804 process, it has done so expressly. *See, e.g.,* DC-ADM 804 § 1(A)(6) ("A grievance regarding sexual abuse will not be addressed through the Inmate Grievance System and must be addressed through Department policy DC-ADM 008" (*Discussed in, Ricciardi v. Shumencky,* 2018 WL 1251834, at *4 (M.D. Pa. Mar. 12, 2018); DC-ADM 804 § 1(A)(7) ("Issues concerning a specific inmate misconduct charge…will not be addressed through the Inmate Grievance System

---

[11] At least one district court in this Circuit has applied the current version of the DC ADM 804 grievance process to religious accommodation claims. *See Johnson v. Wireman,* 2019 WL 1383575, at *15 (M.D. Pa. Mar. 27, 2019), *aff'd in part, vacated in part on other grounds, remanded,* 809 Fed. Appx. 97 (3d Cir. 2020).

and must be addressed through Department policy **DC-ADM 801, "Inmate Discipline"** and/or **DC-ADM 802 "Administrative Custody Procedures."**) (emphasis in original). Given DC-ADM 804's broad application and the absence of any language making DC-ADM 819 the exclusive remedy for requests for religious accommodations, it cannot be said that the DC-ADM 804 process was not available to Simmons following his completion of the DC-ADM 819 process.[12] Accordingly, because the PLRA prohibits a prisoner from commencing a lawsuit concerning "prison conditions…until such administrative remedies *as are available* are exhausted," 42 U.S.C. § 1997e(a), the Court is constrained to conclude that Simmons cannot pursue his religion claims unless he also exhausted the DC-ADM 804 grievance process.

The only grievance in the record that appears to concern a religious issue is Grievance No. 783640. *See* ECF No. 158-7, p. 2. This grievance, however, does not concern any of the accommodations mentioned above but instead focuses on difficulties Simmons appears to have had in writing another book, "Magus Manifesto." *Id.* And furthermore, Grievance No. 783640 was dated January 27, 2019, well-past September 13, 2018, the date by which Simmons had to submit any grievance challenging the denial of his other accommodation requests. *Id.*

Here, upon the final denial of his request for religious accommodations, Simmons did not avail himself of the DOC's DC-ADM 804 grievance process. DC-ADM 804 permits a grievance

---

[12] Where a failure to exhaust the "on-the-books" administrative remedies has been shown, "the inmate plaintiff bears the onus of producing evidence that the on-the-books remedies were in fact unavailable to him or her." *West v. Emig*, 787 Fed. Appx. 812, 814 (3d Cir. 2019) (citing *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018)). "Three kinds of circumstances" have been recognized where "an administrative remedy, although officially on the books," is not "available" because it is "not capable of use to obtain relief": (1) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use," such as when no ordinary prisoner can discern or navigate it; or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Rinaldi*, 904 F.3d at 266-67 (quoting *Ross v. Blake*, 578 U.S. 632, 644 (2016)). *See also Hardy v. Shaikh*, 959 F.3d 578, 584 (3d Cir. 2020) (misleading or deceptive instructions from a prison official, as well as clearly erroneous statements, can render a grievance process unavailable). Although practical arguments can be made that inmates raising religious accommodation requests should not have to exhaust DC-ADM 804 after completing the DC-ADM 819 process, the policy is not "so opaque that it becomes, practically speaking, incapable of use."

to be filed "within 15 working days after the event upon which the claim is based." DC-ADM, Section 1, ¶ 14. Because Simmons' religious claims were based on the denial of his requests for religious accommodations and because that denial was not finalized until August 23, 2018, Simmons had until September 13, 2018, to file a grievance. *See, e.g., Scott*, 2016 WL 4154939, at *6 ("... the only possible 'trigger' that could commence DC-ADM 804's fifteen-day window would have been the denial of his accommodation request."). Here, Simmons did not do so. Indeed, there are no DC-ADM 804 grievances in the summary judgment record relating to Simmons' religion accommodation claims. Therefore, because Simmons did not fully exhaust his administrative remedies as to his First Amendment's free exercise and RLUIPA claims. *See, e.g., Dalie v. Pennsylvania Dep't of Corr.*, 2017 WL 3316265, at *4 (W.D. Pa. Aug. 3, 2017).

IV. Conclusion

For the reasons stated above, the DOC Defendants' Motion for Summary Judgment will be granted. A separate order will follow.

Submitted this 27th day of December, 2021.

BY THE COURT:

_____
RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE